[No. 35958-8-II.    Division Two.    March 11, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD LEE CARLSON, *Appellant*.

508

*Kathryn A. Russell Selk* (of *Russell Selk Law Office*), for appellant.

*Gerald A. Horne, Prosecuting Attorney, Karen A. Watson, Deputy,* and *Jessica Giner, Legal Intern,* for respondent.

¶1 HUNT, J. — Richard Lee Carlson appeals his bench trial convictions and sentence for first degree escape and unlawful possession of cocaine. He argues that (1) the evidence was insufficient to support his escape conviction because the State failed to prove that his escape was "knowing," (2) the trial court's findings of fact and conclusions of law are inadequate under CrR 6.1, and (3) the trial court erred as a matter of law when it ruled he was not eligible for a Drug Offender Sentencing Alternative[1] (DOSA) based on his having received a prior DOSA sentence during the 10 years preceding the current offenses. The State concedes that the trial court erred in ruling Carlson ineligible for a DOSA and, therefore, he is entitled to remand for a new sentencing hearing.

¶2 We affirm Carlson's convictions. In the unpublished portion of this opinion, we (1) hold that to the extent the trial court's findings of fact and conclusions of law do not comply with CrR 6.1, any such error was harmless and (2) accept the State's concession of error and remand for resentencing.

## FACTS

### I. NEW CRIMES

¶3 On July 29, 2006, Richard Lee Carlson was residing in a work release facility in connection with a prior felony conviction. At Carlson's work supervisor's request, John Walkup, the work release program monitor, had approved overtime hours for Carlson, and Carlson was due back at the work release facility by 11:30 PM that night.

---

[1] RCW 9.94A.660.

¶4 At 9:56 PM, Puyallup Tribal Police Officer Gary Tracy conducted a traffic safety check on an illegally parked van. As he approached the van, Tracy observed Carlson, in the driver's seat, and his passenger apparently pulling up their pants. Carlson told Tracy and a second officer that (1) he had recently picked up his male passenger on South Tacoma Way and did not know him, (2) he was parked on the side of the road because he and his passenger were talking,[2] and (3) he was on work release and was supposed to have been back at the work release facility by 6:00 PM.

¶5 Believing Carlson was in violation of his work release conditions by failing to return to the work release facility by 6:00 PM, Officer Tracy arrested Carlson for escape. During a search of the van incident to Carlson's arrest, Tracy found and seized cocaine. Tracy booked Carlson into jail for these two new offenses. Incarcerated in the Pierce County jail, Carlson did not return to his work release facility by 11:30 PM.

## II. PROCEDURE

¶6 The State charged Carlson with first degree escape and unlawful possession of a controlled substance. Carlson waived his right to a jury trial and proceeded to a bench trial.

## A. Trial

¶7 The parties stipulated that (1) Carlson's statements to the arresting officers were admissible; (2) on July 29, 2006, Carlson was serving a sentence in the work release program after having been convicted of a felony; and (3) the Washington State Patrol Crime Lab tests established the substance Tracy found in the van was cocaine.

¶8 In his opening statement, Carlson's counsel explained that (1) most of the facts were not in dispute; (2) the key

---

[2] There was no indication that the van was having any mechanical problems that required Carlson to stop on the side of the road.

escape charge issue was whether Carlson had "voluntarily stayed out beyond the time that he was allowed on work release," Report of Proceedings (RP) (Jan. 30, 2007) at 15; and (3) the evidence would show that Carlson's failure to return to the work release facility on time was not voluntary because his arrest had "prevented" him from returning.[3]

¶9 The State presented testimony from Tracy, Leonard Parker, and Walkup. Tracy described investigating the illegally parked van, his contact with Carlson, and Carlson's subsequent arrest. Parker testified that (1) he was Carlson's work supervisor; (2) on the day of Carlson's arrest, Carlson had contacted him and told him that he needed more time to complete a painting job in Puyallup; (3) he (Parker) contacted Walkup, who approved Carlson's overtime and additional travel time.

¶10 Walkup testified that (1) on the day of the arrest, Carlson was originally due back at the work release facility by 6:30 PM; (2) at Parker's request, he (Walkup) granted Carlson an extension to 11:30 PM; (3) Parker assured him (Walkup) that Carlson would be back well before 11:30 PM; (4) when Carlson was not back by 11:00 PM, he (Walkup) investigated and discovered that Carlson had been arrested; and (5) Carlson did not return to the work release facility that night.

¶11 Carlson was the only defense witness. He testified that (1) he had been driving a company van at the time of his arrest, (2) he had picked up a man he did not know on South Tacoma Way, (3) he intended to give the man a ride to a casino on his way back to work to return the van, (4) he had pulled over to the side of the road to let his passenger finish drinking a beer when Tracy contacted him, and (5) he had contacted Parker and had received permission to extend his work release time. Carlson also (1) denied any

---

[3] We note that (1) Carlson's counsel did not proffer an "uncontrollable circumstances" defense, RCW 9A.76.110(2), in his opening statement and (2) during the course of the trial, he continued to confirm that he was not positing this defense.

knowledge of the drugs found in the van; (2) asserted he told Tracy that he normally had to be back at the work release facility by 6:00 PM but that he had worked late that evening; and (3) stated that if Tracy had not detained and arrested him, he would have been back at the work release facility by 11:30 PM.

¶12 After the testimony was complete but before closing argument, the State and defense counsel discussed the escape charge jury instructions with the trial court to ensure that everyone agreed they were using the correct version of the escape statute and that knowledge, rather than willfulness, was an element of the offense. The trial court acknowledged that the State had charged Carlson under the version of the statute requiring knowledge.

¶13 In closing, the State argued that (1) Carlson's intentional behavior "absolutely contributed to the reason that he did not return to work release" and (2) this behavior was sufficient to establish Carlson "knowingly, by his behavior, failed to return and is guilty of Escape in the First Degree." RP (Jan. 30, 2007) at 81-82. In his closing argument, defense counsel argued that the State had failed to establish Carlson had "knowingly" escaped where it was his arrest, and not his own actions, that caused him to fail to return on time.

## B. Verdict

### 1. Oral ruling

¶14 The trial court orally ruled that Carlson's intentional acts led to his arrest and consequent inability to return to the work release facility on time and that these facts established Carlson had knowingly escaped custody. The trial court discussed how the testimonial facts supported the elements of each offense, and it found Carlson guilty as charged of escape and unlawful possession of cocaine.

## 2. Written findings and conclusions

¶15 In addition to acknowledging the parties' stipulations, the trial court entered the following pertinent written findings of fact and conclusions of law:

### FINDINGS OF FACTS

. . . .

#### III.

[On July 29, 2006, the] defendant was residing at the RAP House/Lincoln Park work release facility located on South Yakima in Tacoma, Washington.

#### IV.

The defendant's Community Corrections Officer from the Department of Corrections had approved the defendant's employment at Brushworx Painting Company.

#### V.

The defendant was allowed to work from 8:00 a.m. until 4:30 p.m. daily, with 2 hours of travel time allowed on weekdays and 3 hours of travel time allowed on holidays and weekends.

#### VI.

John Walkup is a program monitor at the work release facility. He monitors the inmates as they leave and return. Mr. Walkup is allowed to approve overtime work for the inmates.

#### VII.

On July 29, 2006, the defendant signed out and left the work release facility at 7:26 a.m. to go to work at Brushworx Painting Company.

## VIII.

Leonard Parker is a crew leader at Brushworx Painting Company and he sometimes supervises the defendant. He began work at Brushworx Painting when he was in the work release program as well.

## IX.

On July 29, 2006, Mr. Parker called Mr. Walkup at the work release facility in order to get overtime approved for the defendant. Mr. Parker stated that the defendant would be needed to work until 9:30 p.m.

## X.

Mr. Walkup approved the overtime and allowed two hours of travel time. He advised Mr. Parker that the defendant must be back to work release by 11:30 p.m. Mr. Parker assured Mr. Walkup that the defendant would be back in time.

## XI.

At 9:56 p.m. that night, Puyallup Tribal Police Officer Gary Tracy was on patrol in the 2200 block of East Browning, in Pierce County, Washington.

## XII.

At that location, Officer Tracy saw a Toyota Van parked along the side of the roadway. East Browning is a back road that is poorly lit. The van was parked facing the wrong direction, on a hill, where there is a steep bank. Officer Tracy had concerns for the safety of other drivers and any passengers inside the van.

## XIII.

Officer Tracy pulled his patrol car behind the van and activated his takedown lights, which illuminated the inside of the Toyota Van. Officer Tracy could see two individuals in the front seats. They appeared to be pulling up their pants as Officer Tracy approached the driver's side of the van.

## XIV.

The defendant was in the driver's seat. He was cooperative with Officer Tracy. He identified himself, and told Officer Tracy that he did not know the male in the passenger seat, because he had just picked him up on South Tacoma Way.

## XV.

The defendant also told Officer Tracy that he was on work release and was supposed to be back to the facility by 6:00 p.m. (It was approximately 10:00 p.m. by this time.) When Officer Tracy checked the defendant's license and warrant status, he confirmed that the defendant had active conditions with the Department of Corrections.

## XVI.

There was no evidence that there was anything mechanically wrong with the van that the defendant was driving.

## XVII.

Officer Tracy arrested the defendant for escape in the first degree. Officer Tracy arrested the passenger, Rene Hunt, on an outstanding warrant.

## XVIII.

Officer Tracy searched the van incident to arrest. He leaned into the van with his flashlight and could clearly see scattered crumbs of suspected cocaine on the center, table-like surface between the driver and passenger seats. The crumbs were in plain view, laying on top of paperwork that was there. They were easily accessible to the driver and the passenger.

. . . .

## XX.

The defendant was booked into the Pierce County Jail that night and he never returned to the work release facility.

## XXI.

At 11:00 p.m. that night, the defendant had not returned and Mr. Walkup was becoming concerned. Mr. Walkup called Mr. Parker to make sure that the defendant was on his way back. Mr. Parker advised Mr. Walkup that he had recently dropped off the defendant at the bus stop, but he would return to the bus stop to check on him.

## XXII.

Mr. Parker called Mr. Walkup back fifteen minutes later and told him that the defendant had been arrested.

## XXIII.

Officer Gary Tracy was found to be credible.

## XXIV.

John Walkup was found to be credible

## XXV.

Leonard Parker was found not credible.

## XXVI.

The defendant, RICHARD LEE CARLSON, was found not credible. From the foregoing Findings of Fact, the Court makes the following Conclusions of Law.

## CONCLUSIONS OF LAW

### I.

The Court has jurisdiction over this case and the defendant. The events occurred in Pierce County, Washington.

### II.

The defendant, RICHARD LEE CARLSON, is guilty beyond a reasonable doubt of ESCAPE IN THE FIRST DEGREE in that: On or about July 29, 2006, RICHARD LEE CARLSON knowingly escaped from custody or a detention facility while being detained pursuant to a conviction of a felony, in the State of Washington.

### III.

The affirmative defense, that uncontrollable circumstances prevented the defendant from returning to custody, was neither pled nor satisfied in this case. That defense requires that the defendant not contribute to the creation of such circumstances in reckless disregard of the requirement to return. In this case, the defendant did contribute to the circumstances because his activities led to his arrest.

### IV.

The defendant, RICHARD LEE CARLSON, is guilty beyond a reasonable doubt of UNLAWFUL POSSESSION OF A CONTROLLED SUBSTANCE, TO WIT - COCAINE, in that: On or about July 29, 2006, RICHARD LEE CARLSON, possessed a controlled substance in the State of Washington.

Clerk's Papers (CP) at 28-33.

## C. Sentencing

¶16 Carlson stipulated to an offender score of 28 points for each offense based on his other current offense and a stipulated prior criminal history that included 32 adult and

juvenile offenses. At the sentencing hearing, the State requested high-end standard range sentences for both convictions.

¶17 Carlson argued that high-end sentences were excessive. He requested a DOSA sentence if he qualified for one.[4] He candidly admitted that he had previously received a DOSA sentence, probably in 2003, and that he had "failed it because of dirty [urinalyses]." RP (Feb. 23, 2007) at 5.

¶18 The trial court determined that Carlson had "a chemical dependency that has contributed to the offense(s)." CP at 17. After engaging in a colloquy with counsel about whether Carlson was eligible for a DOSA sentence, the trial court concluded:

> My reading of the DOSA statute is that the defendant is ineligible and that DOSA is only available once every 10 years. If he has received a DOSA sentence, whether he completed it or whether he failed it appears to be irrelevant to the statute.

RP (Feb. 23, 2007) at 6. The State then affirmatively opposed Carlson's DOSA request.

¶19 Rejecting the possibility of a DOSA sentence for Carlson, the trial court imposed concurrent standard-range sentences of 70 months for the escape conviction and 24 months for the drug conviction.

¶20 Carlson appeals his convictions, the adequacy of the trial court's written findings of fact and conclusions of law, and the trial court's refusal to consider a DOSA sentence.

## ANALYSIS

### FIRST DEGREE ESCAPE

¶21 Carlson contends on appeal, as he did at trial, that the evidence was insufficient to establish he "knowingly"

---

[4] The State did not comment about Carlson's DOSA request at this time.

escaped from custody.[5] He argues that (1) to establish the knowledge element, the State had to prove beyond a reasonable doubt he knew with a high degree of certainty that his conduct would result in his failing to return to the work release facility on time; (2) the evidence established only that he knew or should have known there was a substantial risk he could be arrested and detained past the time when he was supposed to return to the work release facility; and (3) this evidence established only that he acted recklessly. We disagree.

## A. Standard of Review

¶22 Generally, we review a trial court's decision following a bench trial to determine whether substantial evidence supports any challenged findings and whether the findings support the conclusions of law. *Dorsey v. King County*, 51 Wn. App. 664, 668-69, 754 P.2d 1255, *review denied*, 111 Wn.2d 1022 (1988). Unchallenged findings of fact are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

¶23 We review questions of statutory interpretation de novo. *State v. Stratton*, 130 Wn. App. 760, 764, 124 P.3d 660 (2005). In interpreting statutory language, we must consider context, related provisions, and the statutory scheme as a whole. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). Absent ambiguity, " 'the court must give effect to [the statute's] plain meaning as an expression of legislative intent.' " *Jacobs*, 154 Wn.2d at 600 (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)).

---

[5] Carlson does not similarly argue that the evidence was insufficient to establish the other elements of first degree escape.

## B. Knowledge Element

■ ■ ¶24 RCW 9A.76.110 provides in part:

(1) A person is guilty of escape in the first degree if he or she *knowingly* escapes from custody or a detention facility while being detained pursuant to a conviction of a felony or an equivalent juvenile offense.

(Emphasis added.) RCW 9A.08.010(1)(b) provides:

A person knows or acts knowingly or with knowledge when:

(i) he is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or

(ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute defining an offense.

¶25 Meeting these two statutes' combined definition of "knowledge" for purposes of first degree escape, the trial court's unchallenged findings show that Carlson's intentional acts placed at risk his ability to return to the detention facility on time: findings of fact XI through XVI show that Carlson was neither at work nor actively traveling from work back to the work release facility when Tracy contacted him parked illegally alongside a dark back road. On the contrary, it appears that Carlson was intentionally stopped along the side of the road to engage in some sort of non-work-related contact with another man, whom Carlson claimed was a stranger he had just picked up elsewhere, for whom he (Carlson) had stopped so the passenger could finish a beer.

¶26 Carlson argues that, at most, this evidence shows (1) he merely "disregarded a substantial risk that his conduct might . . . result" in his returning late to work release and (2) this evidence was not enough to show he acted with the requisite knowledge. But even if Carlson was not fully cognizant that his intentional after-work actions would ultimately prevent his timely return to the work release facility, "a reasonable man in the same situation" would know that by engaging in these acts, he put his ability to

return to the work release facility on time in jeopardy. Given these facts, the State fully satisfied the knowledge element of first degree escape.[6]

¶27 Accordingly, we affirm Carlson's convictions.

¶28 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON, C.J., and ARMSTRONG, J., concur.

Review denied at 164 Wn.2d 1026 (2008).

---

[6] On March 3, 2008, Carlson filed a statement of additional authorities directing our attention to our recent decision in *State v. Eaton,* 143 Wn. App. 155, 177 P.3d 157 (2008). In *Eaton,* we held that a defendant cannot be found guilty of a sentencing enhancement for possession of methamphetamine inside a state correctional facility if the drugs were found in the defendant's possession after he was arrested on another charge and brought to the county jail for booking. Noting that although the defendant may have voluntarily possessed the drugs, he did not voluntarily bring those drugs into the county jail, we held that when the legislature enacted the enhancement (RCW 9.94A.533(5)), it did not intend to punish a defendant for a purely involuntary act, and we vacated Eaton's sentence enhancement.

Carlson is apparently attempting to analogize Eaton's involuntary possession within the jail to his (Carlson's) involuntary detention. But *Eaton* and this case are readily distinguishable. First, we specifically limited *Eaton* to the confinement drug-possession enhancement statute. *Eaton,* 143 Wn. App. at 159, ¶6. And second, the enhancement statute in *Eaton* contained no mens rea requirement; here, in contrast, the State had to prove a knowledge element. Thus, here, it was Carlson's intentional, volitional behavior that created the risk he would be unable to return to the work release facility on time and, as we discuss above, that established the knowledge element. Accordingly, *Eaton* is inapplicable.