[No. 34911-6-II.   Division Two.   February 12, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS HARRY EATON, *Appellant*.

*Anne M. Cruser* (of *Law Office of Anne Cruser*), for appellant.

*Arthur D. Curtis, Prosecuting Attorney*, and *Michael C. Kinnie, Deputy*, for respondent.

¶1 BRIDGEWATER, J. — A jury convicted Thomas Eaton of one count of driving while under the influence (DUI) and one count of unlawful possession of a controlled substance, namely, methamphetamine. Eaton does not appeal either of his underlying convictions but argues that the trial court erred in imposing a sentence enhancement under RCW 9.94A.533(5) for possessing methamphetamine while in a county jail. Because officers discovered the methamphetamine only after Eaton had been arrested for DUI, transported to the county jail, and searched in the county jail, we hold that Eaton committed no actus reus, i.e., the voluntary act of possessing methamphetamine in a sentence enhancement zone. Therefore, we vacate the sentence enhancement and remand for resentencing.

## FACTS

¶2 After arresting Eaton for DUI, a police officer transported Eaton to the Clark County Jail, where another officer searched him. During this search, the officer observed "what appeared to be a plastic bag taped to the top of [Eaton's] sock." 1 Report of Proceedings (RP) at 99. Inside this plastic bag, the officers discovered methamphetamine. The State charged Eaton with one count of DUI and one count of possession of a controlled substance, namely, meth-

amphetamine, under RCW 69.50.4013(1).[1] Because Eaton possessed the methamphetamine while in a county jail or state correctional facility, the State sought a sentence enhancement for this count under RCW 9.94A.533(5)(c).[2]

¶3 Although Eaton disputed the applicability of the sentence enhancement, the trial court found that RCW 9.94A.533(5) "doesn't make a distinction about inside the facility." 2 RP at 157. The trial court explained:

> As [the State] rightfully points out, he's inside the jail. Whether he's been admitted inside the jail or is walking through the jail, he's inside the secure facility. He's under arrest. And he has possession. And if you read the statute, it says, mere possession inside the facility gives rise to the enhancement.

2 RP at 157. Thereafter, the trial court noted, "I'm going to have to go with the plain reading of the statute." 2 RP at 159.

¶4 The jury found Eaton guilty as charged, specially finding that he possessed methamphetamine while in a county jail or state correctional facility. Based on this finding, the State added 12 months to his standard sentence range. Thus, Eaton's standard sentence range increased from 0 to 6 months to 12 to 18 months. And the trial court sentenced him to 12 months and one day of confinement.

## ANALYSIS

■ ¶5 Eaton claims that the sentence enhancement under RCW 9.94A.533(5)(c), a zone enhancement, cannot

---

[1] RCW 69.50.4013(1) provides that "[i]t is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter."

[2] RCW 9.94A.533(5)(c) provides that 12 months "shall be added to the standard sentence range if the offender . . . committed the offense while in a county jail or state correctional facility and the offender is being sentenced for [an offense committed under RCW 69.50.4013]."

stand because he did not voluntarily introduce the methamphetamine into the county jail. "The State should not be allowed to physically force a subject into an enhancement zone and then be permitted to choose whether he will be penalized for possessing contraband in the enhancement zone or the non-enhancement zone in which his possession could also be established." Br. of Appellant at 8. We agree.[3]

¶6 We initially note that Eaton does not challenge the lawfulness of his DUI arrest, the reasonableness of the warrantless search under either the United States Constitution or the Washington State Constitution, or his conviction for possession of methamphetamine under RCW 69.50.4013(1). Therefore, our inquiry is limited to determining whether the legislature intended RCW 9.94A.533(5) to punish a defendant for his *involuntary* possession of a controlled substance in a county jail or state correctional facility. Our holding is strictly limited to this enhancement statute, not RCW 9.94.041 (knowing possession of a narcotic drug or controlled substance by prisoners) or RCW 9.94.045 (knowing possession of a narcotic drug or controlled substance by a person not a prisoner).

¶7 In interpreting a statute, our primary duty is to discern and implement the legislature's intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). The starting point is always " 'the statute's plain language and ordinary meaning.' " *J.P.*, 149 Wn.2d at 450 (quoting *Nat'l Elec. Contractors Ass'n v. Riveland*, 138 Wn.2d 9, 19, 978 P.2d 481 (1999)). If the statute's meaning is plain on its face, then we must give effect to that meaning as an expression of what the legislature intended. *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001). Nevertheless, in interpreting a statute, we avoid unlikely, absurd, or strained consequences. *State v. Stannard*, 109 Wn.2d 29, 36, 742 P.2d 1244 (1987); *Mortell v. State*, 118 Wn. App. 846, 851, 78 P.3d 197 (2003).

---

[3] Because nonconstitutional grounds ultimately dispose of this case, we do not need to "rule directly" on the constitutional issues that Eaton raises in his brief. *See Anderson v. City of Seattle*, 123 Wn.2d 847, 853, 873 P.2d 489 (1994); *State v. Speaks*, 119 Wn.2d 204, 207, 829 P.2d 1096 (1992).

■ ¶8 Furthermore, as a general rule, every crime must contain two elements: (1) an actus reus and (2) a mens rea. *State v. Utter*, 4 Wn. App. 137, 139, 479 P.2d 946 (1971); *see also United States v. Apfelbaum*, 445 U.S. 115, 131, 100 S. Ct. 948, 63 L. Ed. 2d 250 (1980). The "actus reus" is "[t]he wrongful deed that comprises the physical components of a crime." BLACK'S LAW DICTIONARY 39 (8th ed. 2004). The "mens rea" is "[t]he state of mind that the prosecution . . . must prove that a defendant had when committing a crime." BLACK'S LAW DICTIONARY 1006 (8th ed. 2004).

¶9 Some crimes, though, including the crime of possession of a controlled substance, have no mens rea requirement. *See* RCW 69.50.4013(1). Our Supreme Court has "specifically construed the statute not to include knowledge." *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004), *cert. denied*, 544 U.S. 922 (2005). Thus, the State simply has the burden of proving the nature of the controlled substance and the fact of possession. *Bradshaw*, 152 Wn.2d at 538.

■ ¶10 Similarly, the sentence enhancement under RCW 9.94A.533(5) has no mens rea requirement. In fact, this sentence enhancement is not a separate sentence or a separate substantive crime. *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 253, 955 P.2d 798 (1998). Rather, it presupposes that the defendant's behavior already constitutes a crime, such as possession of a controlled substance. *See State v. Barnes*, 153 Wn.2d 378, 385, 103 P.3d 1219 (2005).

■ ¶11 But even strict liability punishments, i.e., those crimes and sentence enhancements having no mens rea requirement, require something of an element of volition. "There is a certain minimal mental element required in order to establish the actus reus itself. *This is the element of volition.*" *Utter*, 4 Wn. App. at 139 (emphasis added). At least one author has noted:

> At all events, it is clear that criminal liability requires that the activity in question be voluntary. The deterrent function of the

criminal law would not be served by imposing sanctions for involuntary action, as such action cannot be deterred. Likewise, assuming revenge or retribution to be a legitimate purpose of punishment, there would appear to be no reason to impose punishment on this basis as to those whose actions were not voluntary.

1 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 6.1(c), at 425-26 (2d ed. 2003) (footnote omitted).

¶12 Here, Eaton contends that his possession of methamphetamine in the county jail was not the result of a voluntary act. As his counsel notes, "Once arrested, Mr. Eaton no longer had control over his location or over any of his possessions. That control rested with [the arresting officer] and the corrections officers at the jail." Br. of Appellant at 8. In other words, Eaton attempts to distinguish his voluntary act of possessing the methamphetamine before he was arrested from his involuntary act of possessing the methamphetamine in the county jail.

¶13 On the other hand, the State argues that "the active crime is possessing of the drugs. If those drugs are possessed in an inappropriate area, then the jury is asked whether or not the State has proven beyond a reasonable doubt, an additional penalty element of the activity." Br. of Resp't at 3. The State continues, "[T]his does not require any type of strain[ed] interpretation of [RCW 9.94A.533(5)]. It is meant to be a harsh penalty which can be imposed if the crime is committed in a specific way." Br. of Resp't at 4.

¶14 But the State's interpretation of RCW 9.94A.533(5) leads to an unlikely, absurd, and strained consequence, imposing a strict liability sentence enhancement for *involuntary* possession of a controlled substance in a county jail or state correctional facility. *See State v. Tippetts*, 180 Or. App. 350, 43 P.3d 455 (2002) (decided under a statute codifying voluntary act requirement); *see also Martin v. State*, 31 Ala. App. 334, 17 So. 2d 427 (1944) (holding that an accusation of public intoxication cannot be established where an intoxicated defendant was involuntarily and

forcibly carried into the street by an arresting officer); *Fontaine v. State*, 135 Md. App. 471, 762 A.2d 1027 (2000) (holding that after a defendant was arrested in Delaware and taken to Maryland by the police, the evidence failed to prove that he intended to distribute marijuana in his possession while in Maryland). *But see State v. Winsor*, 110 S.W.3d 882 (Mo. Ct. App. 2003) (holding that willful possession of a controlled substance constitutes a voluntary act and that a defendant's presence in county jail was not required to be voluntary); *Brown v. State*, 89 S.W.3d 630 (Tex. Crim. App. 2002) (holding that a defendant voluntarily possessed marijuana in a correctional facility when he was compelled to enter a correctional facility while in possession of marijuana).

¶15 In *Tippetts*, police officers formally placed a defendant under arrest and took him to the county jail. *Tippetts*, 43 P.3d at 456. After searching him at the county jail, the officers found a small bag of marijuana in his pants pocket. *Tippetts*, 43 P.3d at 456. Based on his possession of marijuana, the State charged the defendant with supplying contraband under Oregon Revised Statute (ORS) 162.185(1)(a), which provides that a person commits the crime of supplying contraband if " '[t]he person knowingly introduces any contraband into a correctional facility, youth correction facility or state hospital.' " *Tippetts*, 43 P.3d at 456 (alteration in original) (quoting ORS 162.185(1)(a)).

¶16 On appeal, the defendant argued that a voluntary act was a necessary prerequisite to proving criminal liability and that he did not voluntarily introduce the marijuana into the county jail. *Tippetts*, 43 P.3d at 456. He based his argument on ORS 161.095(1), which provides, " 'The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which the person is capable of performing.' " *Tippetts*, 43 P.3d at 456 (quoting ORS 161.095(1)).

¶17 The Oregon Court of Appeals examined ORS 161-.095(1) and concluded that the statute requires that (1)

the act that gives rise to the criminal liability be performed or initiated by the defendant and (2) the act be voluntary. *Tippetts*, 43 P.3d at 457. The court also examined ORS 161.085(2) and concluded that a "voluntary act" means " 'a bodily movement performed consciously.' " *Tippetts*, 43 P.3d at 457 (quoting ORS 161.085(2)). Based on its statutory analysis, the court agreed that ORS 161.085(2) and 161-.095(1) supported the defendant's position. *Tippetts*, 43 P.3d at 457. Finally, the court concluded, "Defendant . . . did not initiate the introduction of the contraband into the jail or cause it to be introduced in the jail. Rather, the contraband was introduced into the jail only because the police took defendant (and the contraband) there against his will." *Tippetts*, 43 P.3d at 457.

¶18 Here, because of the lack of legislative history and case law addressing RCW 9.94A.533(5), Eaton relies almost exclusively on *Tippetts* for the proposition that the State cannot hold a defendant criminally liable for his involuntary act. Yet the State argues that there is a "fundamental difference" between RCW 9.94A.533(5) and ORS 161.085(2), ORS 161.095(1), and ORS 162.185(1)(a). Br. of Resp't at 4. And as the State notes, "[*Tippetts*] is not a situation, as [in Washington], where the crime is the possession of a controlled substance and the possession of the drug in a jail is an enhancement." Br. of Resp't at 4.

¶19 While the State is correct, the underlying analysis in *Tippetts* is nevertheless persuasive to our analysis of whether under RCW 9.94A.533(5) Eaton *voluntarily* possessed methamphetamine in the county jail. After all, in this case, Eaton did not bring the methamphetamine into the county jail; a police officer brought Eaton and the methamphetamine into the county jail.

¶20 Thus, in *Tippetts*, the court stated that "a voluntary act requires something more than awareness. It requires an ability to choose which course to take—*i.e.*, an ability to choose whether to commit the act that gives rise to criminal liability." *Tippetts*, 43 P.3d at 458. Relying on the commen-

tary to the Model Penal Code, the Oregon Court of Appeals further stated:

> [T]he mere fact that defendant voluntarily possessed the drugs before he was arrested is insufficient to hold him criminally liable for the later act of introducing the drugs into the jail. Rather . . . the involuntary act must, at a minimum, be a reasonably foreseeable or likely consequence of the voluntary act on which the state seeks to base criminal liability. On these facts, no reasonable juror could find that the introduction of contraband into the jail was a reasonably foreseeable consequence of possessing it.

*Tippetts*, 43 P.3d at 459-60 (citations and footnote omitted); *see also State v. Gonzalez*, 188 Or. App. 430, 71 P.3d 573 (2003) (mere possession of drugs when a defendant was taken by police to a correctional facility is not legally sufficient to prove that he voluntarily introduced contraband into that facility); *State v. Delaney*, 187 Or. App. 717, 71 P.3d 93 (2003) (even assuming that a defendant's actions were so inept that her arrest and the discovery of the contraband were readily foreseeable consequences, she did not voluntarily introduce contraband into a detention center); *see State v. Cole*, 2007-NMCA-99, 142 N.M. 325, 164 P.3d 1024 (actus reus element of the crime of bringing contraband into jail was not met because a defendant did not voluntarily enter the detention facility); *State v. Sowry*, 155 Ohio App. 3d 742, 2004-Ohio-399, 803 N.E.2d 867 (holding that a defendant's possession of contraband in a jail was not the result of a voluntary act because officers brought him into the jail under arrest). *But see State v. Thaxton*, 190 Or. App. 351, 79 P.3d 897 (2003) (a jury could find that, at the time a defendant hid some marijuana in his sock, he knew that the officers were likely to arrest him and take him to jail).

¶21 In conclusion, we presume that when the legislature enacted RCW 9.94A.533(5), it did not intend the unlikely, absurd, or strained consequence of punishing a defendant for his *involuntary* act. *See Stannard*, 109 Wn.2d at 36; *State v. Day*, 96 Wn.2d 646, 648, 638 P.2d 546 (1981) ("The

spirit or purpose of an enactment should prevail over the express but inept wording."); *Mortell*, 118 Wn. App. at 851. We vacate the sentence enhancement imposed under RCW 9.94A.533(5)(c) for Eaton's standard sentence range and remand for resentencing.[4]

HUNT and PENOYAR, JJ., concur.

Review granted at 164 Wn.2d 1013 (2008).

---

[4] Because we vacate the sentence enhancement, we do not address Eaton's argument that the State improperly amended his judgment and sentence to reflect the sentence enhancement.