229 P.3d 704 (2010)
168 Wash.2d 476
STATE of Washington, Petitioner,
v.
Thomas Harry EATON, Respondent.
No. 81348-5.
Supreme Court of Washington, En Banc.
Argued June 11, 2009.
Decided March 25, 2010.
*705 Michael C. Kinnie, Scott Shigeo Ikata, Clark County Prosecuting Attorney's Office, Vancouver, WA, for Petitioner.
Anne Mowry Cruser, Law Office of Anne Cruser, Kalama, WA, for Respondent.
CHAMBERS, J.
¶ 1 Thomas Eaton was arrested for driving under the influence (DUI) and taken by police to the Clark County Jail. At the jail, Eaton was searched by staff who discovered a small bag of methamphetamine taped to his sock. The State charged Eaton with DUI and possession of methamphetamine and sought a sentencing enhancement for possessing a controlled substance in a jail or prison. A jury convicted Eaton on both charges and found by special verdict that Eaton possessed methamphetamine while in *706 a jail. The trial court imposed an enhanced sentence.
¶ 2 At issue is whether a sentencing enhancement for possession of a controlled substance in a jail or prison requires a finding that that defendant took a volitional act to place himself in the enhancement zone. We hold that the enhancement does require a volitional act and affirm the Court of Appeals.

FACTS AND PROCEDURAL HISTORY
¶ 3 On September 22, 2005, Vancouver Police Department Officer Jeff Starks saw Eaton driving with his headlights turned off and made a routine traffic stop. After performing field sobriety tests Officer Starks concluded that Eaton was impaired and arrested him for DUI. Eaton was read his Miranda[1] rights and was taken to jail. There he was searched and officers found "what appeared to be a plastic bag taped to the top of [Eaton's] sock." I Report of Proceedings at 99. The contents of the bag tested positive for methamphetamine.
¶ 4 The State charged Eaton with one count of DUI and one count of possession of a controlled substance. Because the methamphetamine was discovered on Eaton while he was in the county jail the State sought a sentence enhancement. The jury found Eaton guilty of both counts and, by special verdict, found that Eaton possessed methamphetamine in a county jail. Eaton's standard sentencing range would have been 0 to 6 months, but with the sentence enhancement, his range became 12 to 18 months. The trial court sentenced Eaton to 12 months and 1 day.
¶ 5 The Court of Appeals reversed the trial court's imposition of the sentencing enhancement, reasoning that the State failed to prove Eaton acted voluntarily. State v. Eaton, 143 Wash.App. 155, 164-65, 177 P.3d 157 (2008). The court held that the sentencing enhancement statute was not intended to punish defendants for their involuntary acts. Id. at 164, 177 P.3d 157. Eaton's convictions for DUI and possession of a controlled substance are not before us; we are reviewing only the sentencing enhancement for possession of methamphetamine in a jail.

ANALYSIS
¶ 6 Questions of statutory interpretation are reviewed de novo. State v. Wadsworth, 139 Wash.2d 724, 734, 991 P.2d 80 (2000). Our purpose in interpreting a statute is to determine and carry out the intent of the legislature. State v. Cromwell, 157 Wash.2d 529, 539, 140 P.3d 593 (2006). We must construe statutes consistent with their underlying purposes while avoiding constitutional deficiencies. State v. Crediford, 130 Wash.2d 747, 755, 927 P.2d 1129 (1996). In construing a statute, we presume the legislature did not intend absurd results. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003).

Criminal Responsibility
¶ 7 As the Court of Appeals correctly observed: "as a general rule, every crime must contain two elements: (1) an actus reus and (2) a mens rea." Eaton, 143 Wash.App. at 160, 177 P.3d 157 (citing State v. Utter, 4 Wash.App. 137, 139, 479 P.2d 946 (1971)). Actus reus is defined as "`[t]he wrongful deed that comprises the physical components of a crime,'" Id. (alteration in original) (quoting BLACK'S LAW DICTIONARY 39 (8th ed.2004)), and the mens rea is "`[t]he state of mind that the prosecution . . . must prove that a defendant had when committing a crime.'" Id. (alteration in original) (quoting BLACK'S LAW DICTIONARY 1006 (8th ed.2004)). At common law it was said that "to constitute a crime against human laws, there must be, first, a vitious will; and, secondly, an unlawful act consequent upon such vitious will." WILLIAM BLACKSTONE, 5 COMMENTARIES *21. "An involuntary act, as it has no claim to merit, so neither can it induce any guilt: the concurrence of the will, when it has [its] choice either to do or to avoid the fact in question, being the only thing that renders human actions either praiseworthy or culpable." Id.
¶ 8 Although most criminal laws since codified still adhere to this general *707 principle, we now recognize that the "legislature has the authority to create a crime without a mens rea element." State v. Bradshaw, 152 Wash.2d 528, 532, 98 P.3d 1190 (2004) (citing State v. Anderson, 141 Wash.2d 357, 361, 5 P.3d 1247 (2000)). Though they are disfavored, these "strict liability" crimes criminalize unlawful conduct regardless of whether the actor possesses a culpable mental state. State v. Rivas, 126 Wash.2d 443, 452, 896 P.2d 57 (1995); see also Morissette v. United States, 342 U.S. 246, 256 n. 14, 72 S.Ct. 240, 96 L.Ed. 288 (1952). In this way, the legislature seeks to deter harmful conduct by creating harsh penalties that focus on the defendant's actions and their consequences. "The law threatens certain pains if you do certain things, intending thereby to give you a new motive for not doing them." O.W. HOLMES, Jr., THE COMMON LAW 40 (Mark DeWolfe Howe ed., Harvard Univ. Press, 1967) (1881).
¶ 9 Fundamental to our notion of an ordered society is that people are punished only for their own conduct. Where an individual has taken no volitional action she is not generally subject to criminal liability as punishment would not serve to further any of the legitimate goals of the criminal law.[2] We punish people for what they do, not for what others do to them. We do not punish those who do not have the capacity to choose.[3] Where the individual has not voluntarily acted, punishment will not deter the consequences.
¶ 10 As these principles suggest, although an individual need not possess a culpable mental state in order to commit a crime, there is "a certain minimal mental element required in order to establish the actus reus itself." Utter, 4 Wash.App. at 139, 479 P.2d 946. Movements must be willed; a spasm is not an act. Holmes, supra, at 45-46. It is this volitional aspect of a person's actions that renders her morally responsible and her actions potentially deterrable. To punish an individual for an involuntary act would run counter to the principle that "a person cannot be morally responsible for an outcome unless the outcome is a consequence of that person's action." A.P. Simester, On the So-called Requirement for Voluntary Action, 1 Buff. Crim. L. Rev. 403, 405 (1998). It would create what Simester has called "situational liability," penalizing a defendant for a situation she simply finds herself in. Id. at 410. "Unless there is a requirement of voluntariness, situational offenses are at odds with the deepest presuppositions of the criminal law." Id. at 412. As Holmes tells us, the "reason for requiring an act is, that an act implies a choice, and that it is felt to be impolitic and unjust to make a man answerable for harm, unless he might have chosen otherwise." Holmes, supra, at 46. "[T]he choice [to act] must be made with a chance of contemplating the consequence complained of, or else it has no bearing on responsibility for that consequence." Id. A person cannot be answerable for a state of affairs unless she could have done something to avoid it.[4] Simester, supra, at 412.

The Enhancement
¶ 11 The purpose of sentencing enhancements is to provide legislative guidance to courts in calibrating the appropriate punishment for crimes based on relevant circumstances surrounding the underlying conduct. "Zone" enhancements direct courts to sentence offenders beyond the standard range if they are found committing some designated crime in a particular area. For example, the *708 legislature has enacted statutes creating mandatory increased penalties for individuals convicted of possession with intent to deliver controlled substances in a variety of "zones," including near schools, parks, bus stops, and on public transport vehicles. RCW 69.50.435. In this case, Eaton was convicted of possession of methamphetamine and his sentence was enhanced because the police found the methamphetamine while he was in a jail, which has been designated an enhancement zone. RCW 9.94A.533(5).
¶ 12 The Court of Appeals held that Eaton committed no actus reus amounting to voluntary possession of methamphetamine in the enhancement zone. Eaton, 143 Wash.App. at 157, 177 P.3d 157. RCW 69.50.4013(1) states that "[i]t is unlawful for any person to possess a controlled substance." In addition, RCW 9.94A.533(5) requires courts to impose a sentencing enhancement under certain circumstances. The statute states in relevant part:
The following additional times shall be added to the standard sentence range if the offender or an accomplice committed the offense while in a county jail or state correctional facility and the offender is being sentenced for one of the crimes listed in this subsection.
. . . .
(c) Twelve months for offenses committed under RCW 69.50.4013.
For the purposes of this subsection, all of the real property of a state correctional facility or county jail shall be deemed to be part of that facility or county jail.
RCW 9.94A.533(5).
¶ 13 The State argues that the plain language of the statute does not contain a volitional element, that one should not be inferred, and that the sentencing enhancement should be upheld. The State is correct that the language of RCW 9.94A.533(5) is silent on whether a volitional act is required before imposing an enhancement. The statute simply requires that the State show the defendant was in a jail or correctional facility while possessing a controlled substance. However, as noted above, we attempt to construe statutes in a way that is consistent with their underlying purpose. Crediford, 130 Wash.2d at 755, 927 P.2d 1129. As the Court of Appeals concluded, the State's application of the enhancement statute would lead "to an unlikely, absurd, and strained consequence, imposing a strict liability sentence enhancement for involuntary possession of a controlled substance in a county jail or state correctional facility." Eaton, 143 Wash.App. at 161, 177 P.3d 157. Once Eaton was arrested, he no longer had control over his location. From the time of arrest, his movement from street to jail became involuntary: involuntary not because he did not wish to enter the jail, but because he was forcibly taken there by State authority. He no longer had the ability to choose his own course of action. Nor did he have the ability through some other course of action to avoid entering the area that would increase the penalty for the underlying crime.[5] We doubt the legislature intended to grant the police such broad authority to affect the defendant's punishment after arrest. Additional punishment for being in an enhancement zone serves no logical purpose unless we presume that its infliction was intended only where the defendant could have avoided being there.[6] The act may be as simple as choosing to put one foot in front of the other and running the risk of entering an enhancement zone. But it must be a choice made free from the kind *709 of authority the State exercises when it makes an arrest.[7] For these reasons we hold that RCW 9.94A.533(5) encompasses a volitional element that the State must prove beyond a reasonable doubt. Cf. State v. Boyer, 91 Wash.2d 342, 344, 588 P.2d 1151 (1979) (finding an implied element of guilty knowledge in the crime of delivery of a controlled substance); see also State v. Hall, 54 Wash. 142, 144, 102 P. 888 (1909).
¶ 14 Cases from other jurisdictions support our conclusion that the legislature did not intend to hold individuals criminally liable for being in some designated place when forced there involuntarily by an arresting officer. Martin v. State, 31 Ala.App. 334, 335, 17 So.2d 427 (1944) (accusation of public intoxication cannot be established where an intoxicated defendant was involuntarily and forcibly carried onto the street by an arresting officer); Fontaine v. State, 135 Md.App. 471, 762 A.2d 1027 (2000) (holding that after a defendant was arrested in Delaware and taken to Maryland by the police, the evidence failed to prove he intended to distribute marijuana in his possession while in Maryland); State v. Tippetts, 180 Or.App. 350, 43 P.3d 455 (2002) (holding that conviction for supplying contraband in a correctional facility requires a showing the defendant voluntarily introduced the contraband). Echoing Holmes the Tippetts court noted "the concept of fault ordinarily implies the ability to choose." Id. at 355, 43 P.3d 455. Where, as here, the defendant is forcibly transported by police to the area giving rise to additional punishment, he did not have the requisite ability to choose.
¶ 15 The State argues that the above cited cases are distinguishable from the case before us because RCW 9.94A.533(5) is an enhancement statute and not a separate crime. As the State points out, Eaton was convicted of possession of a controlled substance, a crime that does require a volitional act of possession. Under the State's theory, once every element has been proved for the underlying offense, a defendant may receive additional punishment based on any circumstance she finds herself in after the time of arrest, regardless of whether those circumstances were brought about by her own volition. The State suggests that requiring a separate volitional act for the sentencing enhancement "adds additional elements that were never contemplated by the legislature." Pet. for Review at 7. We disagree. Allowing the State to bootstrap additional punishments to the underlying crime where the defendant has done nothing to create the aggravating circumstance would run counter to the notions of justice that serve as the backdrop for our criminal law. While the enhancement in this case was not, strictly speaking, a separate crime, it still requires proof that the defendant did something separate.
¶ 16 While the State bears the burden of proving each element beyond a reasonable doubt, we hold that when a person is found within an enhancement zone in possession of a controlled substance, the State is entitled to a permissive inference that the person is within the zone of his own volition.[8]See State v. Cantu, 156 Wash.2d 819, 822, 132 P.3d 725 (2006) (permissive inferences permitted because they do not relieve the State of its burden of proof). "`[D]ue process is not offended if the prosecution shows that the inference more likely than not flows from the proven fact.'" Id. at 826, 132 P.3d 725 (quoting State v. Deal, 128 Wash.2d 693, 700, 911 P.2d 996 (1996)). However, while possession within the enhancement zone allows a fact finder to infer volition, the inference alone may not be enough for the State to meet its burden. *710 State v. Hanna, 123 Wash.2d 704, 710, 871 P.2d 135 (1994). Here it was not. The facts clearly establish that Eaton was arrested outside the enhancement zone and was transported to the jail by Officer Starks. After he was arrested, there was nothing he could have reasonably done to avoid being taken to jail. The State failed to meet its burden of proof that Eaton volitionally possessed drugs inside the enhancement zone.
¶ 17 Eaton made a choice to possess methamphetamine. That is properly subject to punishment under the laws of our State. The State is seeking to subject Eaton to additional punishment based on circumstances it created. Eaton could not have chosen to avoid the enhancement zone. We hold that RCW 9.94A.533(5) was not intended to create criminal liability for one forced into an enhancement zone against his own will.

CONCLUSION
¶ 18 We hold that RCW 9.94A.533(5) requires that a defendant took some voluntary act to be placed within the enhanced zone in order to subject the defendant to an enhanced sentence. The defendant need not intend or even know he is entering an enhanced zone. The volitional element may be as simple as choosing to put one foot in front of the other to enter the zone, but it must be a choice freely made. The fact that a defendant is found within an enhancement zone gives rise to a reasonable inference that the defendant is there volitionally. The permissive inference does not relieve the State of its burden of proof that the defendant was within the enhancement zone volitionally. Where, as here, the defendant is arrested and taken to the enhancement zone, the volitional component of the actus reus cannot be met. Eaton did not enter the jail volitionally. We affirm the Court of Appeals.
WE CONCUR: Justice CHARLES W. JOHNSON, Justice GERRY L. ALEXANDER, Justice RICHARD B. SANDERS, Justice DEBRA L. STEPHENS.
FAIRHURST, J. (dissenting).
¶ 19 The issue in this case is whether the plain words of RCW 9.94A.533(5) mean what they say. RCW 9.94A.533(5) provides that a sentence enhancement must be added to the standard sentence range for certain drug crimes, including possession of a controlled substance, RCW 69.50.4013(1), if the defendant "committed the offense while in a county jail or state correctional facility." The majority holds that RCW 9.94A.533(5) applies only if the State proves, beyond a reasonable doubt, "that a defendant took some voluntary act to be placed within the enhanced zone." Majority at 710.
¶ 20 The majority is wrong for at least four reasons. First, the statute's plain meaning does not support the majority's interpretation of RCW 9.94A.533(5). Second, the majority undermines the statute's purpose of deterring drug crimes in county jails and state correctional facilities because RCW 9.94A.533(5) will no longer apply to prisonersnone of whom enter jail or prison voluntarily. Third, the majority ignores the difference between a person's conduct and the circumstances surrounding that conduct. Fourth, the majority's reasoning casts doubt on the meaning of other statutes imposing sentence enhancements.
¶ 21 I respectfully dissent.

I. FACTS
¶ 22 Thomas Harry Eaton was arrested and taken to the Clark County Jail on suspicion of driving under the influence. Upon Eaton's arrival, the jail staff asked Eaton to remove his shoes and take his socks off. Eaton removed his shoes but hesitated to remove his socks. Staff asked him a second time to remove his socks. Eaton removed the sock from his left foot. Eaton then asked the jail staff if he could use the bathroom. After they said no and instructed him to remove the other sock, Eaton took off the sock on his right foot. The staff noticed a plastic bag taped to the top of the sock. When the staff moved forward to retrieve the bag, Eaton refused to relinquish the bag and had to be tackled. The bag fell to the floor, and an officer picked it up. The contents *711 tested positive for methamphetamine. For possessing a controlled substance, Eaton was charged and convicted of violating RCW 69.50.4013(1). For being in a county jail at the time of the offense, Eaton received a 12-month sentence enhancement pursuant to RCW 9.94A.533(5).

II. ANALYSIS
¶ 23 Statutory interpretation begins and usually ends with the statute's plain meaning. Because statutes are the creation of the people's elected representatives in the legislature, the "fundamental objective" of statutory interpretation "is to ascertain and carry out the Legislature's intent." Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9, 43 P.3d 4 (2002) (citing State v. J.M., 144 Wash.2d 472, 480, 28 P.3d 720 (2001)). Under the plain meaning rule, "if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Id. at 9-10, 43 P.3d 4 (emphasis added) (citing J.M., 144 Wash.2d at 480, 28 P.3d 720). When a statute does not define a word it uses, as here, the word's plain meaning includes its dictionary definition. State v. Sullivan, 143 Wash.2d 162, 175, 19 P.3d 1012 (2001). "[T]he plain meaning rule requires courts to consider legislative purposes or policies appearing on the face of the statute as part of the statute's context." 2A NORMAN J. SINGER & J.D. SHAMBIE SINGER, STATUTES AND STATUTORY CONSTRUCTION § 48A:16, at 918 (7th ed.2007); accord State ex rel. Faulk v. CSG Job Ctr., 117 Wash.2d 493, 500, 816 P.2d 725 (1991) (stating, "a statute is to be interpreted in a manner that is consistent with its underlying purpose" (citing In re Det. of Cross, 99 Wash.2d 373, 382, 662 P.2d 828 (1983))). Although a statute's plain meaning usually ends the debate, this court will look beyond the face of the statute if following the plain meaning would yield absurd results. See State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003).

A. The words of RCW 9.94A.533(5)
¶ 24 RCW 9.94A.533(5) provides:
The following additional times shall be added to the standard sentence range if the offender or an accomplice committed the offense while in a county jail or state correctional facility and the offender is being sentenced for one of the crimes listed in this subsection. . . .
. . . .
(c) Twelve months for offenses committed under RCW 69.50.4013.
The majority concludes that RCW 9.94A.533(5) "requires that a defendant took some voluntary act to be placed within the enhanced zone." Majority at 710 (emphasis added). But, as the majority acknowledges, "the language of RCW 9.94A.533(5) is silent on whether a volitional act is required before imposing an enhancement." Majority at 708. The words "voluntary," "volitional," "willful," and their kind do not appear in the statute. Words such as "entered" and "be placed" are conspicuously absent, showing that the legislature did not intend to include an actus reus. The majority adds words to the statute even though "[w]e cannot add words or clauses to an unambiguous statute when the legislature has chosen not to include that language." State v. Delgado, 148 Wash.2d 723, 727, 63 P.3d 792 (2003).
¶ 25 The dictionary definitions of the words actually in RCW 9.94A.533(5) do not support a requirement of a voluntary act. The dictionary defines "commit" as to "DO" or "PERFORM," with the usage example of "convicted of committing crimes against the state." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 457 (2002). A dictionary definition of "while" is "during the time that." Id. at 2604. With these definitions, RCW 9.94A.533(5) says that a sentence enhancement applies "if the offender or an accomplice [did] the offense [during the time that] [the offender was] in a county jail or state correctional facility." The plain language of RCW 9.94A.533(5) does not evidence legislative intent to include an element of a voluntary act.[1] The words relate only to the *712 circumstances surrounding the criminal offense defined in other statutes.

B. The purpose of RCW 9.94A.533(5)
¶ 26 Besides ignoring the words of RCW 9.94A.533(5), the majority's interpretation undermines the statute's purpose and leads to absurd results. On its face, the statute's purpose is to deter people from selling, buying, using, or possessing drugs in a jail or state correctional facility. But the majority's interpretation narrows the class of offenders subject to a sentence enhancement under the statute. Because voluntary entrance into the enhancement zone is an element of RCW 9.94A.533(5), according to the majority, RCW 9.94A.533(5) will no longer apply to arrestees or prisonersall of whom are forced into jail or prison against their will. Only employees and visitors enter a jail or prison voluntarily. In Eaton's case, even if Eaton's methamphetamine had not been discovered by jail staff until several days after he was booked, RCW 9.94A.533(5) would not apply because he did not enter the Clark County Jail on his own volition.[2] That result contradicts the statute's overall purpose of reducing the number of drug crimes in jails and prisons.
¶ 27 By contrast, the plain meaning of RCW 9.94A.533(5) advances the statute's purpose in at least three ways. First, a prisoner who is already in a jail or state correctional facility would think twice before having anything to do with illegal drugs. Second, before being taken to jail, an arrestee possessing drugs would have an incentive to either get rid of the drugs or admit possession to the arresting officer. A person so admitting would be subject to a possession charge but not the enhancement. Without the 12-month enhancement, however, the arrestee is better off keeping quiet or lying. There would be a chance that the drugs would not be detected by the booking officer, and even if the arrestee's drugs are noticed eventually by the jail staff, the maximum sentence would be the same as if the drugs had been discovered outside the jail. Because the penalty for possession inside the jail would be the same as for possession outside the jail, the arrestee, in the hope of avoiding being punished altogether, would be more likely to try to sneak the drugs past the jail staff unnoticed. But with the 12-month enhancement, trying to maintain possession unnoticed is a riskier proposition, and the arrestee is much more likely to try to get rid of the drugs or admit to their presence, making the presence of drugs in jail less likely. Third and finally, a nonincarcerated person who might otherwise consider possessing drugs would be less likely to commit possession in the first instance, because there is always the risk of being arrested and booked into jail.

C. The concept of attendant circumstances
¶ 28 The majority's fundamental error is to ignore the difference between a person's conduct and the circumstances surrounding that conduct. In criminal law, liability is often predicated on a combination of mental state, conduct, the conduct's results, and attendant circumstancesthe facts surrounding the conduct. See 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 1.2(c), at 12 (1986) ("The totality of these various itemsconduct, mental fault, plus attendant circumstances and specified result when required by the definition of a crime may be said to constitute the `elements' of the crime."). The majority is right that criminal liability usually does not attach when the conduct is involuntary. But the same is not true for attendant circumstances.
¶ 29 This point is illustrated by a different statute. RCW 46.20.342(1) makes it a crime *713 "for any person to drive a motor vehicle in this state while that person is in a suspended or revoked status." The conduct is the act of driving. An attendant circumstance is a suspended or revoked license. Rarely will a person voluntarily have his or her license suspended or revoked. The Department of Licensing usually does this against the licensee's will. But that does not matter. Criminal liability flows from the conduct of driving at the same time that the attendant circumstance a suspended or revoked driver's license is present, even though the attendant circumstance is usually involuntary.
¶ 30 Sentence enhancements typically relate to attendant circumstances. As the majority observes correctly, "The purpose of sentencing enhancements is to provide legislative guidance to courts in calibrating the appropriate punishment for crimes based on relevant circumstances surrounding the underlying conduct." Majority at 707 (emphasis added). And as the Court of Appeals noted in its opinion, a "sentence enhancement is not a separate sentence of a separate substantive crime." State v. Eaton, 143 Wash.App. 155, 160, 177 P.3d 157 (2008). Instead, an enhancement statute presupposes the defendant committed a crime involving conductin this case, possession of methamphetamineand increases the sentencing range when an attendant circumstance is present. See State v. Barnes, 153 Wash.2d 378, 385, 103 P.3d 1219 (2005).
¶ 31 RCW 9.94A.533(5) follows this pattern. To the contrary of what the majority suggests, RCW 9.94A.533(5) does not deal with conduct, namely the act of entering a particular area. Rather, RCW 9.94A.533(5) describes a circumstancethe offender's locationattending the conduct prohibited by another statute. When a person violates RCW 69.50.4013(1) by possessing a controlled substance "while in a county jail or state correctional facility," the legislature requires the sentencing court to impose a sentence enhancement of 12 months to the standard sentence range. RCW 9.94A.533(5). In this way, RCW 9.94A.533(5) "provide[s] legislative guidance to courts in calibrating the appropriate punishment for crimes based on relevant circumstances surrounding the underlying conduct." Majority at 707. The statute indicates that possession of illegal drugs is already culpable, but it becomes even more culpable when done at a given location. RCW 9.94A.533(5) is unconcerned with how a person got to jail. Rather, RCW 9.94A.533(5) provides additional punishment for a person's voluntary misconduct once there.
¶ 32 In this case, although Eaton did not bring about the attendant circumstance defined in RCW 9.94A.533(5), the underlying criminal conduct of possessing drugs is a justifiable basis for criminal liability. Possession is a continuing offense "lasting as long as the act of possession does," 1 Wayne R. LaFave, Substantive Criminal Law § 6.1(d), at 430 n. 46 (2d ed.2003), and Eaton voluntarily continued his possession. This case would be very different if Eaton were arguing that his possession became involuntary due to the arrest or transport of him to jail. But he does not make that argument, and Eaton does not contest his conviction under RCW 69.50.4013(1). So the majority is wrong to suggest that Eaton was punished for involuntary conduct.
¶ 33 The majority claims that Eaton "did not have the requisite ability to choose." Majority at 709. But criminal liability was still within Eaton's control; he could have simply ceased possessing drugs. Eaton did not choose to enter the Clark County Jail, but he had a choice about his course of conduct upon his arrival. By continuing his possession while he was in jail, rather than relinquishing the methamphetamine beforehand, Eaton subjected himself to the 12-month enhancement provided in RCW 9.94A.533(5). The location of the offense was an attendant circumstance triggering additional punishment for the predicate crime.

D. Effect on other sentence enhancements
¶ 34 The majority's logic and sweeping language also raises doubts about how other sentence enhancements should be read. For instance, several subsections in RCW 69.50.435(1) subject an offender to a sentence enhancement for selling drugs "to a person" who is "[i]n a school," "[w]ithin one thousand feet of the perimeter of the school grounds," *714 "[i]n a public park," "[i]n a public transit stop shelter," or located in another such place. As in RCW 9.94A.533(5), the statute levies an additional punishment for a person who commits a drug offense while in a specific location. As in RCW 9.94A.533(5), the statute merely describes an attendant circumstance accompanying a substantive crime defined in another statute. Under the logic of the majority, however, RCW 69.50.435 presumably would not apply unless the prosecution affirmatively proves beyond a reasonable doubt that the defendant voluntarily entered the enhancement zone.

III. CONCLUSION
¶ 35 I would hold that the plain meaning of RCW 9.94A.533(5) does not include a requirement that the offender was voluntarily in a jail or prison. Because the Court of Appeals reversed Eaton's sentence based on this argument, the court did not address Eaton's other arguments on appeal. I would reverse and remand to the Court of Appeals to address Eaton's other claims.
WE CONCUR: Chief Justice BARBARA A. MADSEN, Justice SUSAN OWENS, Justice JAMES M. JOHNSON.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Of course, the legislature has legitimately criminalized the failure to act in some instances. See e.g. RCW 9A.76.030 (refusing to summon aid for a peace officer); RCW 9A.84.020 (failure to disperse). Importantly, under these crimes, it is the defendant's choice not to act that renders him criminally liable.
[3] For example, children under the age of eight do not have the capacity to commit a crime. RCW 9A.04.050. Nor do we punish defendants with diminished capacity. See State v. James, 47 Wash.App. 605, 609, 736 P.2d 700 (1987).
[4] As a cautionary example, Simester references the notorious English case of Rex v. Larsonneur where the defendant, a French woman, was convicted of being in the United Kingdom when permission to enter had previously been refused. Simester, supra, at 410-11 (citing Rex v. Larsonneur, 149 L.T. 542 (1933)). Larsonneur was convicted despite the fact that she had been brought to the United Kingdom from Ireland by the police, against her will. Larsonneur, 149 L.T. at 544.
[5] The State is concerned that requiring a volitional element calls into question the State's ability to seek harsher punishments for "zone" enhancements generally. The State appears to be under the misapprehension that requiring volition is the same as requiring intent. But nothing in our opinion should be read as requiring that the State prove a defendant intended to be in the enhancement zone or even that she knew she was in the enhancement zone. The State must simply demonstrate that the defendant took some voluntary action that placed him in the zone.
[6] The dissent suggests that its strict interpretation of the sentencing enhancement statute creates incentives for admitting possession to the arresting officer before being taken to jail. Dissent at 712. In other words, if Eaton wished to avoid a more severe punishment, he should have offered up the evidence that would eventually convict him of illegal possession. Such an application of the enhancement statute may have implications on the Fifth Amendment right against self-incrimination.
[7] The dissent suggests that our holding eliminates the State's ability to seek a sentencing enhancement under RCW 9.94A.533(5) even where the controlled substance is discovered several days after a defendant is booked. Dissent at 713. It does not. At some point, when the defendant retains possession despite the opportunity to do otherwise, possession within the zone becomes voluntary. The State simply bears the burden of proving this has occurred.
[8] While neither party has specifically addressed permissive inferences, both parties focus their arguments on what is required to prove the enhancement. A discussion of the State's burden of proof regarding the volitional element is necessary to fully resolve this issue.
[1] Further, the Court of Appeals, the parties, and the majority have not pointed to anything in the legislative history discussing whether the sentence enhancement requires a finding the offender was volitionally in the jail or prison.
[2] The majority dismisses this concern, claiming, "At some point, when the defendant retains possession despite the opportunity to do otherwise, possession within the zone becomes voluntary." Majority at 709 n. 7. But the majority holds that the prosecution must prove beyond a reasonable doubt "that a defendant took some voluntary act to be placed within the enhanced zone." Id. at 710. The majority's interpretation conditions RCW 9.94A.533(5) on the defendant taking some affirmative, voluntary step to enter a county jail or state prison.

When these statements are taken together, the majority seems to say that by passing a few days in jail, an incarcerated person takes "some voluntary act to be placed within" the jail, in satisfaction of the majority's interpretation of RCW 9.94A.533(5). But how can an inmate's presence in jail suddenly become voluntary?