IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No.  36308-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JAMIE L. WALTARI, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Jamie Waltari appeals after his convictions for three counts of delivery of a controlled substance and one count of possession of a controlled substance with intent to deliver, all with school bus route stop enhancements.  The State cross appeals, asserting the trial court lacked authority to impose a drug offender sentencing alternative (DOSA) sentence.  We affirm.

FACTS

In September 2016, Detective Bryson Aase learned through a confidential informant (CI) that Jamie Waltari was selling methamphetamine.  The CI told Detective Aase she would assist with a controlled purchase of methamphetamine from Mr. Waltari in exchange for consideration of pending drug charges against her.

Detective Aase and other detectives arranged a controlled purchase of methamphetamine from Mr. Waltari. The CI agreed to meet with Mr. Waltari at his residence.

Prior to the meeting, detectives searched the CI to confirm the absence of cash and contraband. Detectives fitted the CI with a body wire, gave her $200 in recorded currency and directed her to purchase 3.5 grams of methamphetamine. The CI went to Mr. Waltari's residence and purchased 7 grams of methamphetamine from him. The additional amount was fronted to the CI by Mr. Waltari, with the expectation of additional payment later. The CI then met with detectives and turned over the methamphetamine.

Following this, Detective Aase set up another controlled purchase. The CI was again given a body wire and $200 in recorded currency. Half of the money given to the CI was to pay for the previously fronted drugs. At the meeting inside his residence, Mr. Waltari told the CI he did not have any methamphetamine. But he did take $100 from the CI to compensate him for the fronted drugs. Mr. Waltari discussed how he would purchase 16 ounces of methamphetamine for sale, break it into smaller quantities, and make a profit of $25 for each one-eighth of an ounce he sold. The CI later admitted she used methamphetamine inside Mr. Waltari's residence during the controlled purchase.

2

Detective Aase set up two additional controlled purchases between the CI and Mr. Waltari. On each of these occasions, the CI was given a sum of money—$150 the first time and $140 the second time, and a body wire. Each time, the CI used the money to purchase methamphetamine from Mr. Waltari and then gave the purchased drugs to detectives.

On January 25, 2017, Deputy Joseph Snyder saw Mr. Waltari driving with a broken tail light. Deputy Snyder eventually stopped Mr. Waltari for the infraction. He learned that Mr. Waltari's license was suspended and arrested him. A second deputy searched Mr. Waltari incident to arrest and discovered a small amount of methamphetamine in his pocket. The deputies also discovered two cell phones and $240 in cash in Mr. Waltari's pocket. A third deputy deployed a certified K-9, which alerted to the presence of narcotics in Mr. Waltari's vehicle. A search warrant was issued, and 5.4 grams, or almost one-fifth of an ounce, was found in a bag under a seat cover.

On January 26, 2017, the State charged Mr. Waltari with two counts of delivery of a controlled substance based on two of the controlled purchases Detective Aase had arranged and one count of possession of a controlled substance, based on the January 2017 arrest. In September 2017, the State moved to amend the charges to (1) add a third count of delivery of a controlled substance, based on the third controlled purchase

arranged by Detective Aase, (2) add an alternative charge of possession with the intent to deliver based on the January 2017 arrest, and (3) allege an enhancement that each of the three deliveries took place within 1,000 feet of a school bus route stop designated by the district. In early October 2017, the trial court granted the State's motion.

In December 2017, the State filed a second motion to amend the charges. The State moved to amend the count of possession with intent to deliver to include a special allegation that the "delivery" occurred within 1,000 feet of a school bus route stop designated by the district. In March 2018, the trial court granted the State's second motion to amend without objection. In May 2018, the State moved to amend for a third time. The third motion sought to correct a scrivener's error, changing the word "delivery" to "possession." The trial court granted the State's third motion to amend without objection.

On July 5, 2018, the case proceeded to a bench trial. Both Detective Aase and the CI testified about the controlled purchases. In addition, Detective Aase testified, based on his experience and training, that separate packaging of methamphetamine, having a significant sum of cash, and having multiple cell phones were all indicative of trafficking methamphetamine. Detective Carpenter testified, based on his experience and training, narcotics meant for personal use were often hidden on a defendant's body and that a

second quantity hidden separately was usually indicative of an intent to deliver. Detective

Carpenter further testified that 5.4 grams of methamphetamine was not usually an amount

carried for personal use and the amount was indicative of a delivery.

The trial court found that the State had proved all charges and enhancements

beyond a reasonable doubt. The court granted Mr. Waltari's request for a DOSA

sentence and sentenced him to 57 months of incarceration.

Mr. Waltari timely appealed, and the State timely cross-appealed.

ANALYSIS

Mr. Waltari raises four arguments: (1) the trial court erred by allowing the State to

amend the charges three times, (2) there is insufficient evidence to sustain his conviction

for the January 2017 charge, (3) the trial court erred in finding the State proved the school

bus route stop enhancement for the January 2017 charge, and (4) there is insufficient

evidence to sustain his conviction for the three controlled purchase charges. In its cross

appeal, the State asserts the trial court lacked authority to impose a DOSA sentence. We

address these arguments in the order raised by the parties.

A.    ALLOWING THE STATE TO AMEND THREE TIMES

Mr. Waltari contends the trial court erred in allowing the State to amend the

charges three times. However, Mr. Waltari did not preserve this issue by objecting

below to the amendments. We may decline to review an unpreserved claim of error.

RAP 2.5(a). Because reviewing the claimed error is simpler than explaining why the

error is not manifest, we exercise our discretion and review the purported error.

Mr. Waltari claims the trial court violated his due process rights under article I,

section 22, of the Washington Constitution. The section reads: "In criminal prosecutions

the accused shall have the right . . . to demand the nature and cause of the accusation

against him . . . ." CONST. art. I, § 22. He argues, by allowing amendments after the

original charges were filed, and in the absence of any new information after the time

charges were filed, the trial court violated this right. Mr. Waltari's argument is not

supported by any authority.

CrR 2.1 allows the State to amend charges "at any time before verdict or finding if

substantial rights of the defendant are not prejudiced." Mr. Waltari fails to explain how

the amendments, all occurring well before trial, prejudiced his ability to mount a defense.

This failure is fatal to his argument. We conclude the trial court did not violate Mr.

Waltari's constitutional right to be informed of the charges against him by granting the

State's amendments well before trial.

B.    SUFFICIENCY OF EVIDENCE TO SUSTAIN CONVICTION FOR JANUARY 2017
      CHARGE

Mr. Waltari argues there is insufficient evidence to sustain his conviction for the

January 2017 charge of possession with intent to deliver.  We disagree.

In a criminal case, the State must provide sufficient evidence to prove each

element of the charged offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S.

307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  When a defendant challenges the

sufficiency of the evidence, the proper inquiry is, "whether, after viewing the evidence in

the light most favorable to the State, any rational trier of fact could have found guilt

beyond a reasonable doubt."  *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068

(1992).  "[A]ll reasonable inferences from the evidence must be drawn in favor of the

State and interpreted most strongly against the defendant."  *Id.*  Furthermore, "[a] claim of

insufficiency admits the truth of the State's evidence and all inferences that reasonably

can be drawn therefrom."  *Id.*  In a challenge to the sufficiency of the evidence,

circumstantial evidence and direct evidence carry equal weight.  *State v. Goodman*, 150

Wn.2d 774, 781, 83 P.3d 410 (2004).  On issues of conflicting testimony, credibility of

witnesses, or persuasiveness of the evidence, this court defers to the trier of fact.  *State v.

Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

To prove possession with intent to deliver, the State must show, beyond a reasonable doubt, the defendant not only possessed the narcotics, but also intended to deliver the narcotics at that time or at some point in the future. *State v. Davis*, 79 Wn. App. 591, 594, 904 P.2d 306 (1995). Simple possession, even in large quantities, is not enough to infer an intent to deliver. *State v. Hutchins*, 73 Wn. App. 211, 216, 868 P.2d 196 (1994). "An officer's opinion of the quantity of a controlled substance normal for personal use is insufficient to establish, beyond a reasonable doubt, that a defendant possessed the controlled substance with an intent to deliver." *Id.* at 217. An additional factor, such as possessing a significant quantity of cash, is required to establish intent to deliver. *State v. Campos*, 100 Wn. App. 218, 222-23, 998 P.2d 893 (2000).

Mr. Waltari was arrested in January 2017 carrying two relatively small quantities of methamphetamine. The quantities were hidden separately—one in his pocket and the other in a bag under a seat cover. He also had $240 in cash and two cell phones. The detectives testified that hiding drugs separately, a large quantity of cash, and multiple cell phones all indicate a suspect's intent to sell narcotics. Individually considered, the relatively small amount of methamphetamine and cash are insufficient to sustain the conviction. But together with evidence that Mr. Waltari had two cell phones and had hidden the methamphetamine separately, there was sufficient evidence for a trier of fact

8

to find beyond a reasonable doubt that he possessed the controlled substance with intent to deliver.

    C.    SCHOOL BUS ROUTE STOP ENHANCEMENT

Mr. Waltari argues the trial court erred by finding the State proved the school bus route stop enhancement for the January 2017 charge. He argues he was not voluntarily in the prohibited zone, but instead was involuntarily stopped in the prohibited zone by law enforcement. To support his argument, he relies on *State v. Eaton*, 143 Wn. App. 155, 159, 177 P.3d 157 (2008), *aff'd*, 168 Wn.2d 476, 229 P.3d 704 (2010). We disagree with Mr. Waltari's argument and distinguish *Eaton*.

In *Eaton*, the defendant was arrested for driving under the influence and taken to jail. 168 Wn.2d at 479. Once there, officers searched him and found methamphetamine in his sock. The State charged him with driving under the influence, possession of a controlled substance, and enhanced the latter by alleging that possession occurred within a county jail. The defendant was convicted of both counts and received an enhanced sentence. On appeal, the Supreme Court reversed the enhancement, and held that the zone enhancement did not apply because the defendant was not voluntarily within the prohibited zone. *Id.* at 487-88.

*Eaton* is easily distinguished.  Here, Mr. Waltari was voluntarily in the prohibited school bus route stop zone when he was stopped and arrested.  We conclude the trial court did not err by applying the school bus route stop enhancement to the January 2017 charge.

D.      SUFFICIENCY OF EVIDENCE TO SUSTAIN DELIVERY CONVICTIONS BASED ON THE THREE CONTROLLED PURCHASES

Mr. Waltari argues there is insufficient evidence to sustain his three delivery of controlled substance convictions because the CI was not credible.  Whether the CI was credible or not, we disagree with his argument.

As we previously noted, the State must provide sufficient evidence to prove each element of the charged offense beyond a reasonable doubt.  *Jackson*, 443 U.S. at 316.  When a defendant challenges the sufficiency of the evidence, the proper inquiry is, "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt."  *Salinas*, 119 Wn.2d at 201.  On issues of conflicting testimony, credibility of witnesses, or persuasiveness of the evidence, this court defers to the trier of fact.  *Thomas*, 150 Wn.2d at 874-75.

Mr. Waltari's argument focuses on the fact that the CI was using methamphetamine during at least one of the controlled purchases and was, thus, not credible.  First, we do not decide issues of credibility.  Second, the purchases were

10

controlled and audibly recorded, thus making the credibility of the CI irrelevant.  The fact

the CI left with money and no drugs and returned with drugs and no money is

circumstantial evidence that Mr. Waltari sold methamphetamine to the CI.  The audible

recordings are direct evidence of this.  Regardless of the CI's credibility, there is ample

evidence to sustain Mr. Waltari's convictions based on the three controlled purchases.

E.      DOSA ELIGIBILITY

By cross appeal, the State argues the trial court committed legal error when it

imposed a DOSA sentence.  We note that the State is allowed to appeal a DOSA sentence

if the appeal involves purported legal error.  *State v. Williams*, 149 Wn.2d 143, 147, 65

P.3d 1214 (2003).  We review claims of legal error de novo.  *In re Post-Sentence Review

of Bercier*, 178 Wn. App. 148, 150, 313 P.3d 491 (2013).

RCW 9.94A.660 sets forth conditions that an offender must meet to be eligible for

a DOSA sentence.  One condition requires that the offender not be convicted of a "violent

offense."  *See* RCW 9.94A.660(1)(a).

Ordinarily, the maximum penalty for delivery of a controlled substance, or

possession with intent to deliver a controlled substance, is 10 years.  *See*

RCW 69.50.401.  However, pursuant to RCW 69.50.435(1), the maximum period of

incarceration is doubled to 20 years if the delivery or possession occurred within a

protected zone. Here, Mr. Waltari's maximum period of incarceration for each of his four convictions is 20 years.

A class A felony is a violent offense. *See* RCW 9.94A.030(56)(a)(i). Therefore, if the present convictions include a class A felony, Mr. Waltari is ineligible for a DOSA sentence. The State, citing RCW 9.94A.035(1), argues that each of Mr. Waltari's convictions are class A felonies because each is punishable for up to 20 years. We disagree.

RCW 9.94A.035(1) provides:

> For a felony defined by a statute of this state that is not in Title 9A RCW, *unless otherwise provided* . . . (1) If the maximum sentence of imprisonment authorized by law upon a first conviction of such felony is twenty years or more, such felony shall be treated as a class A felony for purposes of this chapter.

(Emphasis added.)

RCW 69.50.401(2)(b) explicitly lists delivery of a controlled substance (methamphetamine), and possession of a controlled substance with intent to deliver (methamphetamine) as class B felonies. Because the legislature has explicitly listed these crimes as class B felonies, the "unless otherwise provided" phrase italicized above controls. We conclude that Mr. Waltari's convictions are not violent offenses because the

No. 36308-2-III
*State v. Waltari*

convictions are class B felonies, not class A felonies. The trial court did not commit legal error by imposing a DOSA sentence.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Pennell, J.

13