STATE OF NORTH CAROLINA Upon the Relation of BILL ATKINS v. LLOYD FORTNER, ADRIAN BUCHANAN, RUSH T. WRAY, and EVERTON POWELL.

(Filed 8 October, 1952.)

1. Appeal and Error § 10a—

A "case on appeal" is not necessary where the record proper contains case agreed which is equivalent to a special verdict.

2. Public Officers § 2: Schools § 4b—Procedure to fill vacancy in membership of county board of education.

Construing G.S. 115-42 in conjunction with G.S. 115-37 and G.S. 115-38, it is held that a vacancy in the membership of a county board of education may be filled by the county executive committee of the political party to

which the former incumbent belonged for that portion of the unexpired term between the occurrence of the vacancy and the next regular session of the General Assembly, provided such committee acts within thirty days of the vacancy, but when it does not act within that period of time the State Board of Education has power to fill the vacancy, and its appointee is entitled to the office notwithstanding that the executive committee has attempted to act after the expiration of the thirty day period. The General Assembly alone has power to fill the vacancy for that portion of the unexpired term subsequent to its next regular session, and the provision of the statute that such vacancy be filled from candidates nominated by the party primary or convention of such county in instances where vacancy occurs before the primary or convention, applies only to the filling of the vacancy by the General Assembly and does not limit the action of the county executive committee or the State Board of Education.

**3. Appeal and Error § 6c (2)—**

An exception to the judgment is sufficient to raise the question of whether the facts embodied in the case agreed support the judgment.

**4. Public Officers § 6c—**

A public office is vacant when it is without an incumbent who has the legal right to exercise its functions, and a vacancy occurs as of the time of the happening of the event which is the cause of the vacancy.

**5. Same—**

Where a vacancy in a public office occurs by virtue of the constitutional provision against double office holding, Constitution of North Carolina, Art. XIV, Sec. 7, such vacancy occurs as of the date of the acceptance of the second office unaffected by the fact that the person accepting the second office continues to discharge the duties of the office in good faith, since ignorance of the law excuses no man.

APPEAL by defendants Rush T. Wray and Everton Powell from *Mc-Lean, Special Judge,* at the August Term, 1952, of the Superior Court of Yancey County.

Civil action in the nature of *quo warranto* to determine conflicting claims to public offices.

After this cause was regularly in court upon pleadings filed, the parties agreed on the facts and submitted the cause to the judge upon a case agreed. The controlling facts appear in chronological order in the numbered paragraphs set forth below.

1. The Board of Education of Yancey County is a governmental agency, having the duties, powers, and responsibilities specified by Chapter 115 of the General Statutes. It acts through three members.

2. Clyde A. Ayers, Mark W. Bennett, and John Thomas qualified as members of the Board of Education of Yancey County for a period of two years beginning on the first Monday in April, 1951, under a legislative appointment made by Chapter 256 of the 1951 Session Laws of North Carolina. Ayers and Bennett adhere to the Democratic Party.

3. On 5 July, 1951, Bennett accepted the office of Mayor of Burnsville without relinquishing his office as a member of the Board of Education of Yancey County, and undertook to discharge the duties of both offices from that time until 9 April, 1952, when the decision in *Edwards v. Board of Education,* 235 N.C. 345, 70 S.E. 2d 170, was handed down.

4. On 31 August, 1951, Ayers resigned as a member of the Board of Education of Yancey County, and the Democratic Executive Committee of Yancey County, acting under G.S. 115-42, elected another Democrat, namely, R. A. Radford, who was then holding the office of United States Postmaster at Cane River, North Carolina, to fill the vacancy in the membership of the Board of Education of Yancey County caused by the resignation of Ayers until the meeting of the next regular session of the General Assembly. Radford forthwith accepted the office of member of the Board of Education of Yancey County without relinquishing the postmastership at Cane River, and undertook to discharge the duties of both offices from that time until 9 April, 1952, when the decision in *Edwards v. Board of Education, supra,* was handed down.

5. No proceedings of any kind were ever brought against Bennett and Radford to try their claims to the posts on the Board of Education of Yancey County. They ceased to discharge the duties of these posts on 9 April, 1952, when the decision in *Edwards v. Board of Education, supra,* was handed down.

6. On 19 April, 1952, the Democratic Party held a convention in Yancey County to name candidates for county offices, and nominated two of its members, namely, Lloyd Fortner and Adrian Buchanan, as candidates for membership on the county board of education without specifying whether such nominees were candidates for vacancies or regular terms.

7. On 29 April, 1952, the Democratic Executive Committee of Yancey County, which purported to act under G.S. 115-42, took action sufficient in form to appoint Fortner and Buchanan to serve as members of the Board of Education of Yancey County until the regular meeting of the General Assembly in 1953 in the places actually occupied by Bennett and Radford down to 9 April, 1952. Fortner and Buchanan subsequently took the oaths prescribed by law for members of county boards of education, and claim to be presently entitled to the two offices mentioned in this paragraph.

8. On 1 May, 1952, the State Board of Education, which also purported to act under G.S. 115-42, took action sufficient in form to appoint two other Democrats, namely, Rush T. Wray and Everton Powell, to serve as members of the Board of Education of Yancey County until the regular meeting of the General Assembly in 1953 in the places actually filled by Bennett and Radford down to 9 April, 1952. Wray and Powell forthwith took the oaths prescribed by law for members of county boards of educa-

tion, and entered into the actual possession of the two posts on the Board of Education of Yancey County, which they still occupy under the claim that they hold the legal title to them.

9. On 6 June, 1952, the relator Bill Atkins, a taxpaying citizen and resident of Yancey County, brought this civil action in the nature of *quo warranto* against Lloyd Fortner, Adrian Buchanan, Rush T. Wray and Everton Powell, as defendants, to try their conflicting claims to the two posts on the Board of Education of Yancey County pursuant to leave granted him by the Attorney-General.

When the cause was heard upon the case agreed, the judge rendered a judgment adjudging "that the defendants Lloyd Fortner and Adrian Buchanan are lawful members of the Board of Education of Yancey County," and declaring "that the defendants Rush T. Wray and Everton Powell are not legal members of the Board of Education of Yancey County." The defendants Rush T. Wray and Everton Powell excepted "to the entry and signing of said judgment" and appealed.

*Charles Hutchins for the relator, Bill Atkins, appellee.*

*R. W. Wilson for the defendants, Lloyd Fortner and Adrian Buchanan, appellees.*

*C. P. Randolph and W. E. Anglin for the defendants, Rush T. Wray and Everton Powell, appellants.*

ERVIN, J. The contention of the appellees that this appeal cannot be heard because the appellants have not brought to this Court a case on appeal is untenable. The record proper is before us. It contains the case agreed, which is equivalent to a special verdict. McIntosh: North Carolina Practice and Procedure in Civil Cases, sections 518 and 679. The exception to the judgment suffices to raise the legal question whether the facts embodied in the case agreed support the adjudication that Fortner and Buchanan rather than Wray and Powell are entitled to occupy the posts on the Board of Education of Yancey County until the regular meeting of the General Assembly in 1953. *Bond v. Bond,* 235 N.C. 754, 71 S.E. 2d 53; *In re Hall,* 235 N.C. 697, 71 S.E. 2d 140; *Development Co. v. Parmele,* 235 N.C. 689, 71 S.E. 2d 474.

The two sets of rival claimants base their respective claims to the offices at issue upon the statute codified as G.S. 115-42, which reads as follows: "All vacancies in the membership of the board of education in such counties by death, resignation, or otherwise shall be filled by the action of the county executive committee of the political party of the member causing such vacancy until the meeting of the next regular session of the General Assembly, and then for the residue of the unexpired term by that body. If the vacancy to be filled by the General Assembly in such cases shall

have occurred before the primary or convention held in such county, then in that event nominations for such vacancies shall be made in the manner hereinbefore set out, and such vacancy shall be filled from the candidates nominated to fill such vacancy by the party primaries or convention of such county. All vacancies that are not filled by the county executive committee under the authority herein contained within thirty days from the occurrence of such vacancies shall be filled by appointment by the State Board of Education."

It may be argued with much reason that the Constitution does not permit the Legislature to vest the power to appoint public officers in non-governmental bodies or persons, and that in consequence the provision of this statute which purports to authorize the county executive committee of a political party to fill a vacancy in the membership of a county board of education is invalid. See in this connection: 67 C.J.S., Officers, section 30, and cases cited. We by-pass this interesting question without discussion or decision, and take it for granted without so adjudging for the purpose of this particular appeal only that the statute codified as G.S. 115-42 is valid in all respects.

This course imposes upon us the task of construing G.S. 115-42 in conjunction with G.S. 115-37 and G.S. 115-38. When the two statutes last cited are read aright, they provide that the political parties of the State shall nominate at their county primaries or conventions in each even numbered year candidates for membership on county boards of education, and that the General Assembly shall elect from the candidates so nominated at its regular session in the ensuing odd numbered year members of county boards of education for terms of office beginning on the first Monday in April of the year in which they are elected and lasting for two years.

When G.S. 115-42 is reduced to simple terms, it specifies that whenever a vacancy occurs in the membership of a county board of education, the resulting unexpired term is divided into two parts; that the first part begins as soon as the vacancy occurs and continues until the meeting of the next regular session of the General Assembly, and the second part embraces all of the unexpired term thereafter remaining; that the power to fill the vacancy for the first part of the unexpired term resides in the county executive committee of the political party of the former member whose office is vacant during the thirty days next succeeding the occurrence of the vacancy, but passes to and vests in the State Board of Education in case the appropriate county executive committee does not fill the vacancy for the first part of the unexpired term within the thirty days specified; and that the power to fill the vacancy for the second part of the unexpired term belongs to the General Assembly exclusively.

The second sentence of G.S. 115-42 does not undertake to compel the county executive committee or the State Board of Education to fill vacancies in the membership of the county board of education for the first part of the unexpired term from the candidates nominated by the party primaries or conventions of the county. According to its express wording, this sentence applies only to vacancies "to be filled by the General Assembly," *i.e.*, vacancies for the second parts of unexpired terms. If this plain language should be distorted by construction from its true meaning to cover vacancies for the first parts of unexpired terms, such construction would largely nullify the general policy of the law to fill vacancies in public offices as soon as practicable after they occur in so far as vacancies in the membership of county boards of education are concerned because it would rob county executive committees and the State Board of Education of all power to fill vacancies in county boards of education antedating county primaries or conventions until such primaries or conventions name candidates for such vacancies. In addition, such construction would preclude county executive committees from filling any vacancies in the membership of county boards of education other than those occurring during the thirty days next preceding the holding of county primaries or conventions.

Under the relevant statutory provisions, the determinative fact in this case is the time of the occurrence of the vacancies in the membership of the Board of Education of Yancey County. If the vacancies occurred within thirty days preceding 29 April, 1952, the Democratic Executive Committee of Yancey County was authorized to fill them for the first parts of the unexpired terms, and its appointees, Fortner and Buchanan, are entitled to hold the offices at issue until the meeting of the next regular session of the General Assembly; but if the vacancies occurred more than thirty days before 29 April, 1952, the State Board of Education was empowered to fill them for the first parts of the unexpired terms, and its appointees, Wray and Powell, are entitled to occupy the offices in dispute until the meeting of the next regular session of the General Assembly.

A public office is vacant when it is without an incumbent who has the legal right to exercise its functions. *Board of Education of Newark v. Civil Service Commission of New Jersey,* 98 N.J.L. 417, 119 A. 875. The vacancy in the office occurs at the time of the happening of the event which is the cause of the vacancy. *Attorney-General ex rel. O'Hara v. Montgomery,* 275 Mich. 504, 267 N.W. 550; *State ex rel. Grant v. Eaton,* 114 Mont. 199, 133 P. 2d 588; *State ex rel. Austin v. Superior Court of Whatcom County,* 6 Wash. 2d 61, 106 P. 2d 1077.

The facts revealed by the case agreed show that Bennett and Radford engaged in double office holding in violation of Article XIV, Section 7, of the North Carolina Constitution, which makes this declaration: "No

person who shall hold any office or place of trust or profit under the United States, or any department thereof, or under this state, or under any other state or government, shall hold or exercise any other office or place of trust or profit under the authority of this State, or be eligible to a seat in either house of the General Assembly: Provided, that nothing herein contained shall extend to officers in the militia, justices of the peace, commissioners of public charities, and commissioners for special purposes."

When Bennett violated the constitutional prohibition against double office holding by accepting a second office under the State, *i.e.*, the mayor- alty of the town of Burnsville, without surrendering his first office under the State, *i.e.*, his membership on the county board of education, he auto- matically and instantly vacated his office on the county board of education, and he did not thereafter act as either a *de jure* or a *de facto* officer in performing functions of a member of the county board of education because he had neither right nor color of right to that office. *Edwards v. Board of Education, supra; S. v. Long,* 186 N.C. 516, 120 S.E. 87; *Whitehead v. Pittman,* 165 N.C. 89, 80 S.E. 976.

When Radford violated the constitutional prohibition against double office holding by accepting a second office under the State, *i.e.*, member- ship on the county board of education, without surrendering his first office under the United States, *i.e.*, the postmastership at Cane River, his attempt to qualify as a member of the county board of education was absolutely void, and he did not act as either a *de jure* or a *de facto* officer in performing functions of a member of the county board of education because he had neither right nor color of right to that office. *Edwards v. Board of Education, supra.*

Since Bennett forfeited the legal right to exercise the functions of the first office in controversy by accepting the mayoralty of the Town of Burnsville, the vacancy in that office occurred on 5 July, 1951, when that event took place; and since Radford never possessed the legal right to exercise the functions of the second office in controversy, the vacancy in that office occurred on 31 August, 1951, when his supposed predecessor, Ayers, resigned.

It necessarily follows that Wray and Powell are lawfully entitled to occupy the two posts on the county board of education until the regular session of the General Assembly in 1953, and that the judgment to the contrary must be reversed.

We have not overlooked the assertion contained in the brief of the appellees Fortner and Buchanan that the members of the Democratic Executive Committee of Yancey County are laymen not well versed in the law; that consequently they had no knowledge of the existence of the vacancies involved in this case until 9 April, 1952, when the decision in

*Edwards v. Board of Education, supra,* was handed down; and that their appointments ought to be adjudged valid because they acted with dispatch after they acquired knowledge of the existence of the vacancies.

This is simply a new attack on the old legal principle that ignorance of the law excuses no man. Few laws would be observed if ignorance of the law were an acceptable excuse. The eminent English jurist and statesman John Selden expressed this truth in these words three centuries ago: "Ignorance of the law excuses no man; not that all men know the law, but because 'tis an excuse every man will plead, and no man can tell how to refute him."

Judgment reversed.