**STATE v. BARNES**

[229 N.C. App. 556 (2013)]

STATE OF NORTH CAROLINA
v.
CHRISTOPHER L. BARNES

No. COA13-76

Filed 17 September 2013

1. **Prisons and Prisoners—possession of marijuana in facility—knowing possession sufficient**

    The trial court did not err by refusing to dismiss a charge of possession of contraband in a local confinement facility pursuant to N.C.G.S. § 90-95(e)(9), a felony, where defendant was arrested for driving while impaired and a misdemeanor amount of marijuana was discovered at the county jail while defendant was awaiting a breath test. The evidence presented at trial clearly supported a finding that defendant knowingly possessed a controlled substance and that this knowing possession occurred in a local confinement facility.

2. **Prisons and Prisoners—possession of marijuana—involuntary presence in facility sufficient**

    The trial court correctly denied defendant's motion to dismiss a charge of possession of a controlled substance in a local confinement facility where a package of marijuana fell out of defendant's pants while he was waiting for a DWI breath test. A defendant may be found guilty of possession of a controlled substance in a local confinement facility even though he was not voluntarily present in the facility.

3. **Drugs—possession of controlled substance in jail—simple possession—lesser offense**

    Defendant should not have been separately convicted for both possession of a controlled substance in a confinement facility and simple possession of the same controlled substance.

McGEE, Judge, dissenting.

Appeal by defendant from judgments entered 17 February 2012 by Judge W. Allen Cobb, Jr., in Wayne County Superior Court. Heard in the Court of Appeals 4 June 2013.

*Attorney General Roy Cooper, by Associate Attorney General Erica Garner, for the State.*

*Anna S. Lucas for Defendant.*

ERVIN, Judge.

Defendant Christopher L. Barnes appeals from a judgment sentencing him to a term of six to eight months imprisonment based upon his convictions for simple possession of a controlled substance and possession of a controlled substance in a penal institution or local confinement facility. On appeal, Defendant argues that the trial court erred by denying his motion to dismiss the possession of a controlled substance in a local confinement facility on the grounds that the evidence did not support his conviction for committing that offense or, alternatively, that the trial court erred by entering judgment against him based upon both his convictions for possession of a controlled substance in a confinement facility and simple possession of the same controlled substance. After careful consideration of Defendant's challenges to the trial court's judgments in light of the record and the applicable law, we conclude that, while the trial court correctly denied Defendant's motion to dismiss the possession of a controlled substance in a local confinement facility charge, it erred by entering judgment based on Defendant's convictions for both possession of a controlled substance in a local confinement facility and simple possession of marijuana, so that Defendant's conviction for simple possession of a controlled substance must be vacated and this case must be remanded to the Wayne County Superior Court for resentencing.

## I. Factual Background

### A. Substantive Facts

At approximately 2:00 a.m. on 21 January 2011, Officer Melvin Smith of the Goldsboro Police Department observed Defendant drive his vehicle onto Ash Street in Goldsboro without operating his headlights. As a result, Officer Smith stopped Defendant's vehicle. Upon approaching Defendant, Officer Smith noticed a strong smell of alcohol about his person. After observing that Defendant's speech was slurred and after hearing Defendant state that he was "not that drunk," Officer Smith requested that Defendant exit his vehicle and perform certain field sobriety tests. As a result of Defendant's performance on these field sobriety tests, the smell of alcohol about Defendant's person, and Defendant's red and glassy eyes, Officer Smith determined that Defendant was "appreciably impaired" as the result of his consumption of alcohol and arrested him for driving while subject to an impairing substance.

After being placed under arrest, Defendant was handcuffed with his hands behind his back, searched for weapons, and transported to the Wayne County jail. Upon his arrival at the jail, Defendant requested to use the restroom. As part of his attempt to honor Defendant's request, Officer Smith changed the positioning of Defendant's handcuffs so as to place Defendant's hands in front of his body. In addition, Officer Smith placed himself in a position to observe Defendant's effort to use the restroom without seeing his private parts.

While in the restroom, Defendant urinated on himself, accused Officer Smith of being responsible for this mishap, and refused to cooperate with Officer Smith any further. As a result, Officer Smith was required to enlist help from other officers in returning Defendant to the location at which breath samples were taken from individuals who had been placed under arrest for driving while impaired. After Defendant was seated in a chair at that location, a bag containing a substance ultimately determined to be marijuana fell from his pants leg.

## B.  Procedural Facts

On 3 October 2011, the Wayne County grand jury returned bills of indictment charging Defendant with possession of methylenedioxyamphetamine, possession of the same substance in a penal institution or local confinement facility,[1] possession of marijuana with the intent to sell or deliver, and possession of marijuana in a penal institution or local confinement facility. The charges against Defendant came on for trial before the trial court and a jury at the 13 February 2012 criminal session of the Wayne County Superior Court. At the conclusion of the State's evidence, the trial court dismissed the possession of marijuana with the intent to sell or deliver charge while allowing the jury to consider the issue of Defendant's guilt of the lesser included offense of simple possession of marijuana. On 16 February 2012, the jury returned verdicts convicting Defendant of simple possession of marijuana and possession of marijuana in a penal institution or local confinement facility. On 17 February 2012, the trial court consolidated Defendant's convictions for judgment and sentenced Defendant to a term of six to eight months

---

1. All of the charges relating to Defendant's possession of methylenedioxyamphetamine were voluntarily dismissed by the State based upon a determination that methylenedioxyamphetamine had not been statutorily defined as a controlled substance as of the date upon which Defendant was arrested for driving while impaired and brought to the Wayne County jail.

imprisonment. Defendant noted an appeal to this Court from the trial court's judgment.[2]

## II. Legal Analysis

### A. Possession of a Controlled Substance in a Local Confinement Facility Charge

In his initial challenge to the trial court's judgment, Defendant argues that the trial court erred by denying his motion to dismiss the possession of a controlled substance in a local confinement facility charge. More specifically, Defendant contends that the record evidence was not sufficient to support the jury's decision to convict him of committing this offense given that the record did not contain evidence tending to show that he intended to possess a controlled substance in a local confinement facility. Defendant's contention lacks merit.

### 1. Standard of Review

In considering whether to grant a motion to dismiss for insufficiency of the evidence, the trial court must determine " 'whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense.' " *State v. Bradshaw*, 366 N.C. 90, 93, 728 S.E.2d 345, 347 (2012) (quoting *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In conducting the required analysis, the "trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor." *Id.* at 92, 728 S.E.2d at 347 (quoting *State v. Miller*, 363 N.C. 96, 98, 678 S.E.2d 592, 594 (2009)) (internal quotation marks omitted). "All evidence, competent or incompetent, must be considered. Any contradictions or conflicts in the evidence are resolved in favor of the State, and evidence unfavorable to the State is not considered." *Id.* at 93, 728 S.E.2d at 347. We review the trial court's denial of a motion to dismiss for insufficiency of the evidence using a *de novo* standard of review. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

---

2. In addition to the offenses discussed in the text, Defendant was also charged with and convicted of driving while impaired. We have not set forth the procedural facts relating to this charge in our opinion given that Defendant has not advanced any argument concerning this charge in his brief before this Court.

## 2. Defendant's Mental State

**[1]** In his brief, Defendant argues that N.C. Gen. Stat. § 90-95(e)(9), which prescribes the punishment for possession of a controlled substance in a local confinement facility, should not be construed as a strict liability statute and contends that, since the record is devoid of any evidence tending to show that Defendant specifically intended to bring a controlled substance into the jail, his motion to dismiss this charge should have been allowed. Although portions of Defendant's argument reflect a correct understanding of the applicable law, we are unable to agree with his ultimate conclusion that the trial court should have granted his dismissal motion.

The term *mens rea* refers to "[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime." *Black's Law Dictionary* 999 (7th ed. 1999). Although culpable or criminal negligence may suffice to support a defendant's conviction for committing a criminal offense in some instances, *see State v. Oakman*, 191 N.C. App. 796, 800, 663 S.E.2d 453, 457 (noting that "culpable negligence can satisfy the intent requirement for certain crimes"), *disc. review denied*, 362 N.C. 686, 671 S.E.2d 330 (2008), a conviction for committing many, if not most, crimes requires proof that the defendant acted with either general or specific intent. *But see, e.g., State v. Jones*, 353 N.C. 159, 167, 538 S.E.2d 917, 924 (2000) (stating that "[a]rson, as a 'malice' type crime, is neither a specific nor a general intent offense but requires 'willful and malicious' conduct") (quoting *State v. Vickers*, 306 N.C. 90, 100, 291 S.E.2d 599, 606 (1982)). For example, "[f]irst degree murder, which has as an essential element the intention to kill, has been called a specific intent crime . . . [while] [s]econd degree murder, which does not have this element, has been called a general intent crime." *State v. Coble*, 351 N.C. 448, 449, 527 S.E.2d 45, 47 (2000) (quoting *State v. Jones*, 339 N.C. 114, 148, 451 S.E.2d 826, 844 (1994), *cert. denied*, 515 U.S. 1169, 115 S. Ct. 2634, 132 L. Ed. 2d 873 (1995)) (quotation marks omitted). The difference between these two categories of criminal offenses is that "[s]pecific-intent crimes are crimes which have as an essential element a specific intent that a result be reached," while "[g]eneral-intent crimes are crimes which only require the doing of some act." *Oakman*, 191 N.C. App. at 800, 663 S.E.2d at 457 (quoting *State v. Pierce*, 346 N.C. 471, 494, 488 S.E.2d 576, 589 (1997)) (citations and internal quotations omitted). A court determines whether a particular criminal offense constitutes a general or specific intent crime by examining the elements which must be proved in order to support a conviction for committing that offense. *See, e.g., State v. Mize*, 315 N.C. 285, 293,

337 S.E.2d 562, 567 (1985) (stating that "[t]he *mens rea* or the criminal intent required for first degree murder is proven through the elements of premeditation and deliberation").

N.C. Gen. Stat. § 90-95(e)(9) provides that "[a]ny person who violates [N.C. Gen. Stat. §] 90-95(a)(3) on the premises of a penal institution or local confinement facility shall be guilty of a Class H felony." A careful examination of the relevant statutory language provides no indication that the General Assembly intended to create a specific intent crime by enacting N.C. Gen. Stat. § 90-95(a)(3), which simply punishes the possession of a controlled substance. "[A]n accused has possession of marijuana within the meaning of the Controlled Substances Act, G.S. Chapter 90, Art. V, when he has both the power and the intent to control its disposition or use . . . ." *State v. Baxter*, 285 N.C. 735, 737-38, 208 S.E.2d 696, 698 (1974). Although N.C. Gen. Stat. §§ 90-95(a)(1) and (a)(2) punish, among other things, the possession of either a controlled substance or a counterfeit controlled substance with the "intent to" manufacture, sell or deliver, N.C. Gen. Stat. § 90-95(a)(3) contains no reference to the necessity for proof that the defendant acted with any specific intent. Thus, guilt of possession of a controlled substance in violation of N.C. Gen. Stat. § 90-95(a)(3) simply requires proof of general intent coupled with the requisite knowledge. *See State v. Elliott*, 232 N.C. 377, 378-79, 61 S.E.2d 93, 95 (1950) (stating that lack of knowledge is a defense to a possession of intoxicating liquor charge). As a result, since a conviction for committing the offense made punishable by N.C. Gen. Stat. § 90-95(e) (9) involves a violation of N.C. Gen. Stat. § 90-95(a)(3) committed in a penal institution or local confinement facility, we agree with Defendant that the offense made punishable by N.C. Gen. Stat. § 90-95(e)(9) is not a strict liability statute.[3]

On other hand, however, we cannot agree that the offense made punishable by N.C. Gen. Stat. § 90-95(e)(9) is, as Defendant suggests in his brief, a specific intent crime.[4] Although N.C. Gen. Stat. § 90-95(e) (9) does provide for the punishment of violations of N.C. Gen. Stat. § 90-95(a)(3) committed on the premises of a penal institution or local confinement facility, nothing in the language of either N.C. Gen. Stat. § 90-95(a)(3) or N.C. Gen. Stat. § 90-95(e)(9) indicates that the defendant has to specifically intend to possess a controlled substance in such a

---

3. We do not understand the State to disagree with Defendant's contention that the crime made punishable by N.C. Gen. Stat. § 90-95(e)(9) is not a strict liability offense.

4. Defense counsel at trial candidly admitted to the court that he did not believe that the offense made punishable in N.C. Gen. Stat. § 90-95(e)(9) was a specific intent crime.

location as a prerequisite for a finding of guilt. Instead, N.C. Gen. Stat. § 90-95(e)(9) simply provides for an enhanced punishment for the knowing possession of a controlled substance in violation of N.C. Gen. Stat. § 90-95(a)(3) committed under a specific set of circumstances. *See* N.C. Gen. Stat. § 90-95(e) (providing that "[t]he prescribed punishment and degree of any offense under this Article shall be subject to the following conditions"); *see also State v. Alston,* 111 N.C. App. 416, 421, 432 S.E.2d 385, 388 (1993) (holding that the "sale [of a controlled substance] on school property constituted an aggravated sale pursuant to [N.C. Gen. Stat.] § 90-95(e)(8)"). The only effect of a determination that a defendant committed the offense punishable pursuant to N.C. Gen. Stat. § 90-95(e) (9) is to sanction conduct that would otherwise violate N.C. Gen. Stat. § 90-95(a)(3) more severely than would be the case pursuant to N.C. Gen. Stat. § 90-95(d). As a result, we are simply unable to agree with Defendant's contention that a conviction of the offense made punishable by N.C. Gen. Stat. § 90-95(e)(9) requires proof of any sort of specific intent and believe that the relevant offense has been sufficiently shown to exist in the event that the record contains evidence tending to show that the defendant knowingly possessed a controlled substance while in a penal institution or local confinement facility.

The evidence presented at trial clearly supports a finding that Defendant knowingly possessed a controlled substance and that this knowing possession occurred in a local confinement facility. For that reason, the record contains ample support for Defendant's conviction for committing the offense made punishable by N.C. Gen. Stat. § 90-95(e)(9). As a result, although Defendant's contention that the criminal offense specified in N.C. Gen. Stat. § 90-95(e)(9) is not a strict liability offense is certainly correct, the record does contain sufficient evidence to support a determination that Defendant committed the general intent plus knowledge crime made punishable by that statutory provision. Thus, the principal contention advanced in Defendant's brief does not justify an award of appellate relief.

### 3. Voluntariness

[2] In addition to arguing that the crime punishable by N.C. Gen. Stat. § 90-95(e)(9) is not a strict liability offense, Defendant argues that he did not "voluntarily enter the Wayne County Detention Center."[5] In essence,

---

5. Although Defendant never specifically mentions the term *actus reus* and describes his argument as resting upon the State's failure to show that he possessed the "intent" required for a finding of guilt, we believe that it is fair to interpret Defendant's argument as an assertion that he lacked the intent necessary to support a finding of guilt and that he did not act intentionally, *i.e.*, that he should be acquitted because he did not enter the Wayne County jail while possessing marijuana voluntarily.

Defendant argues that, even if he had the requisite mental state needed to support a conviction for committing the offense made punishable by N.C. Gen. Stat. § 90-95(e)(9), his dismissal motion still should have been granted because he did not voluntarily bring controlled substances into a local confinement facility. According to the argument advanced by Defendant and accepted by our dissenting colleague, the offense of possession of less than a half ounce of marijuana, which would have otherwise been a Class 3 misdemeanor, *see* N.C. Gen. Stat. § 90-95(d)(4), cannot be transformed into a felony by the conduct of the officers who arrested him and brought him into a local confinement facility against his wishes. As a result, Defendant essentially contends, and our dissenting colleague agrees, that the record does not reflect the occurrence of the voluntary act necessary to support his conviction for committing a criminal offense.

As a general proposition, the term *"actus reus"* refers to "[t]he wrongful deed that comprises the physical components of a crime." *Black's Law Dictionary* 37 (7th ed. 1999). According to the *actus reus* requirement, guilt of a criminal offense ordinarily requires proof that the defendant voluntarily committed a physical act. *See State v. Fields*, 324 N.C. 204, 208, 376 S.E.2d 740, 742 (1989) (explaining that "[t]he absence of consciousness not only precludes the existence of any specific mental state, but also excludes the possibility of a voluntary act without which there can be no criminal liability") (citations and quotation marks omitted). As a result, regardless of "[w]hether the offense charged be a specific-intent or a general-intent crime, in order to convict the accused the State must prove that he voluntarily did the forbidden act." *State v. Caddell*, 287 N.C. 266, 296, 215 S.E.2d 348, 367 (1975). After considering the specific language of the statute under which Defendant was convicted and the decisions reached in the majority of jurisdictions which have considered this issue, however, we are convinced, contrary to Defendant's contention, that a defendant may be found guilty of possession of a controlled substance in a local confinement facility even though he was not voluntarily present in the facility in question.

The first problem with this aspect of Defendant's challenge to the trial court's decision to deny his dismissal motion is that it has no support in the relevant statutory language. The offense punishable by N.C. Gen. Stat. § 90-95(e)(9) revolves around the possession of a controlled substance in a penal institution or local confinement facility rather than around the intentional bringing or introduction of a controlled substance into such a facility. A reviewing court should, of course, take the statutory language defining the offense for which a defendant was convicted

and the purpose which the General Assembly sought to accomplish by enacting that language seriously in determining the showing necessary to support a finding of guilt. As we have already noted, nothing in the relevant statutory language requires proof that Defendant voluntarily introduced a controlled substance into the penal institution or confinement facility. In addition, given that the offense made punishable by N.C. Gen. Stat. § 90-95(e)(9) was obviously intended to assist in controlling the amount of controlled substances brought into and consumed in prisons or jails, we have difficulty seeing how the purpose underlying N.C. Gen. Stat. § 90-95(e)(9) is served by treating defendants who simply possess controlled substances at the time of their arrest and have those substances on their persons when taken into a jail or prison differently from defendants who consciously intend to bring controlled substances into such facilities. As a result, the position espoused by the Defendant is unsupported by the language of and contrary to the purpose underlying N.C. Gen. Stat. § 90-95(e)(9). *See Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 137 (1990) (stating that "[t]he primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent").

In addition, Defendant's position is inconsistent with the result reached in the majority of decisions from other jurisdictions that have addressed the issue of whether a defendant can be convicted of possessing a controlled substance in a confinement facility after having been involuntarily brought into the facility following an arrest.[6] *See State v. Canas*, 597 N.W.2d 488, 496 (Iowa 1999) (upholding the defendant's conviction because "the defendant in [that case] had the option of disclosing the presence of the drugs concealed in his person before he entered the jail and became guilty of the additional offense of introducing controlled substances into a detention facility"), *overruled on other grounds in State v. Turner*, 630 N.W.2d 601, 606, n.2 (Iowa 2001); *Brown v. State*, 89 S.W.3d 630, 632-33 (Tex. Crim. App. 2002) (*en banc*) (upholding the defendant's conviction on the grounds that the "voluntary act" requirement had no relation to the defendant's mental state and that the necessary "voluntary act" had occurred as long as the defendant's physical movements were not involuntary); *State v. Winsor*, 110 S.W.3d 882, 886 (Mo. Ct. App. 2003) (upholding the defendant's conviction on the grounds that the existence of the required "voluntary act" hinged upon the voluntariness of the defendant's possession of the controlled

---

6. In addition to the six opinions discussed in the text, Tennessee reached a similar conclusion in an unpublished decision. *State v. Carr*, 2008 Tenn. Crim. App. LEXIS 753 (Tenn. Crim. App. 2008).

substance rather than the voluntariness of his presence in the jail); *State v. Cargile*, 123 Ohio St. 3d 343, 345, 916 N.E.2d 775, 777 (2009) (upholding the defendant's conviction on the grounds that, even though the defendant "did not have any choice [about] whether to go to jail following his arrest, the fact that his entry into the jail was not of his volition [did] not make his conveyance of drugs into the detention facility an involuntary act" given that "he did not have to take the drugs with him");[7] *State v. Alvarado*, 219 Ariz. 540, 545, 200 P.3d 1037, 1042 (2008) (upholding the defendant's conviction on the grounds that the fact that the arresting officers had "informed defendant of the consequences of bringing contraband into the jail and gave him an opportunity to surrender any contraband beforehand highlight[ed] that defendant was performing a bodily movement 'consciously and as a result of effort and determination' when he carried the contraband into the jail" and that any suggestion that the defendant had to have a particular mindset at the time that he entered the jail confused the *mens rea* issue with the *actus reus* issue); *People v. Low*, 49 Cal. 4th 372, 385, 232 P.3d 635, 644, 110 Cal. Rptr. 3d 640, 651 (2010) (upholding the defendant's conviction on the grounds that "the officer gave defendant ample opportunity to avoid violating" the statute and that "nothing support[ed] defendant's suggestion that he was forced to bring drugs into jail, that commission of the act was engineered by the police, or that he had no choice but to violate" the statute); *but see State v. Tippetts*, 180 Ore. App. 350, 354, 43 P.3d 455, 457 (2002) (overturning the defendant's conviction on the grounds that he had not committed the required "voluntary act," which the court defined as an act "performed or initiated by the defendant");[8] *State v. Cole*, 142 N.M. 325, 328, 164 P.3d 1024, 1027 (2007) (overturning the defendant's conviction on the grounds that, rather than bringing

---

7. We note that the Ohio Court of Appeals in *State v. Sowry*, 155 Ohio App. 3d 742, 803 N.E.2d 867 (2004), came to a contrary conclusion. However, it seems clear to us that that decision was implicitly overruled in *Cargile*.

8. Although our dissenting colleague argues that we have attempted to distinguish the language of the Oregon statute at issue in *Tippetts* from the language of N.C. Gen. Stat. § 90-95(e)(9), we readily acknowledge that the outcomes reached in the decisions from other jurisdictions discussed in the text of this opinion, including *Tippetts*, do not hinge on the literal language of the statutory provisions at issue in those cases and that, instead, those decisions focus directly on the issue of whether a finding that a defendant unlawfully possessed controlled substances in a prison or jail can be sustained when the defendant is brought into the confinement facility in the aftermath of a custodial arrest by investigating officers. We do, however, believe that the wording of the relevant statutory provision is important and have taken the language of N.C. Gen. Stat. §§ 90-95(a)(3) and 90-95(e) (9) into account in reaching the decision that Defendant's conviction for possession of a controlled substance in a local confinement facility should not be overturned.

contraband into the jail himself, "law enforcement brought him and the contraband in his possession into the facility");[9] *State v. Eaton*, 168 Wash. 2d 476, 485, 229 P.3d 704, 708-09 (2010) (overturning the defendant's conviction on the grounds that a finding of guilt requires that the defendant make "a choice [] free from the kind of authority the State exercises when it makes an arrest"). The majority of decisions which have addressed the issue before us in this case have essentially held that, while guilt of an offense stemming from possession of a controlled substance in a confinement facility does require the defendant to commit a voluntary act, the necessary voluntary act occurs when the defendant knowingly possesses the controlled substance.[10] We find this logic convincing. As a result, we conclude that the voluntary act necessary for guilt of the offense made punishable by N.C. Gen. Stat. § 90-95(e) (9) occurs when the defendant knowingly possesses a controlled substance and that the recognition of a requirement that a defendant make a decision to intentionally bring controlled substances into a confinement facility would be, in reality, the adoption of a specific intent or *mens rea* requirement rather than the effectuation of the *actus reus* requirement.[11]

---

9. Interestingly, the New Mexico Court of Appeals has held in a number of unpublished decisions that, when a prisoner who has been granted work release brings unlawful controlled substances back to the facility after work, he can be convicted of bringing contraband into the prison facility despite having no alternative except to enter the unit in which he is confined because the defendant "was in prison where he knew the contraband was prohibited" and elected to return to the facility with forbidden substances anyway. *See State v. Rueda*, 2009 N.M. App. Unpub. LEXIS 360, at *5 (2009); *State v. Acosta*, 2009 N.M. App. Unpub. LEXIS 244, at *2-3, *cert. denied*, N.M. LEXIS 956 (July 14, 2009).

10. We recognize that, while certain voluntarily created states of impairment such as intoxication do not constitute a defense to a general intent crime, *see, e.g., State v. Baldwin*, 330 N.C. 446, 462, 412 S.E.2d 31, 41 (1992) (recognizing that "voluntary intoxication may only be considered as a defense to specific intent crimes"), unconsciousness and other factors, such as duress, may shield a defendant from any culpability. *E.g., State v. Jerrett*, 309 N.C. 239, 264-65, 307 S.E.2d 339, 353 (1983) (quoting *State v. Mercer*, 275 N.C. 108, 116, 165 S.E.2d 328, 334 (1969), *overruled on other grounds in Caddell*, 287 N.C. at 290, 215 S.E.2d at 363) (recognizing that "[t]he absence of consciousness not only precludes the existence of any specific mental state, but also excludes the possibility of a voluntary act without which there can be no criminal liability") (internal quotation marks omitted); *State v. Seahorn*, 166 N.C. 373, 377, 81 S.E. 687, 688 (1914) (noting, without making any explicit mention of the *actus reus* requirement, that "the law presumed that the wife acted under the compulsion of her husband, and the burden was upon the State to rebut this presumption). However, Defendant has not advanced any sort of unconsciousness or duress-related defense in this case.

11. Although certain of the opinions from other jurisdictions that uphold convictions resting on facts similar to those present here note that the defendant was warned that taking a controlled substance into the jail would constitute a separate offense, we do not believe that the absence of such a warning in this case is of any consequence given that

STATE v. BARNES

[229 N.C. App. 556 (2013)]

The ultimate logic underlying the position taken in the decisions from other courts that have refrained from adopting the majority view and the position espoused by Defendant and our dissenting colleague appears to rest upon a sense that it is simply unfair to punish a defendant who chooses to possess a controlled substance and is then arrested and taken into custody without voluntarily surrendering the controlled substances in his possession as severely as a defendant who deliberately chooses to introduce controlled substances into a penal institution or confinement facility. Although we understand the equitable appeal of such logic, we also believe that a defendant who is arrested with controlled substances in his possession has options other than simply taking the controlled substances with him into the confinement facility. For example, the defendant always has an opportunity to disclose the existence of these controlled substances to the arresting officer before he ever reaches the jail. As the Ohio Supreme Court has noted, while the defendant "was made to go to the detention facility, . . . he did not have to take the drugs with him." *Cargile*, 123 Ohio St. 3d at 345, 916 N.E.2d at 777. Similarly, we cannot agree with our colleagues on the Oregon Court of Appeals that "no reasonable juror could find that the introduction of contraband into the jail was a reasonably foreseeable consequence of possessing it," *Tippetts*, 180 Ore. App. at 358-59, 354, 43 P.3d 455, 460, given that individuals may be placed under arrest for committing a variety of offenses which occur on the spur of the moment and are, for that reason, liable to be taken to a confinement facility while in the possession of controlled substances if their conduct warrants such action. Thus, we simply do not find the logic that appears to underlie the decisions requiring a finding that the defendant voluntarily decide to introduce controlled substances into a penal institution or local confinement facility as a precondition for a determination that the defendant committed an offense like that made punishable pursuant to N.C. Gen. Stat. § 90-95(e)(9) persuasive.[12]

---

ignorance of the law is no excuse for a failure to comply with its terms, *e.g. State ex rel. Atkins v. Fortner*, 236 N.C. 264, 271, 72 S.E.2d 594, 598 (1952) (recognizing the "legal principle that ignorance of the law excuses no man"), and given that legislatures and courts do not, in most instances, make the criminality of specific instances of conduct dependent on the provision of information by law enforcement officers.

12. This Court is not oblivious to the fact that our decision may have the effect of requiring a defendant who is arrested while in possession of a controlled substance to admit to the commission of a criminal offense in order to avoid liability for committing a more serious one. However, aside from the fact that Defendant did not advance an argument in reliance upon Fifth Amendment principles in his brief, *Viar v. N.C. Dept. of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (stating that "[i]t is not the role of the appellate courts . . . to create an appeal for an appellant"), and the fact that the

As a result, for the reasons set forth above, we do not believe that the State is required to show that a defendant made a conscious decision to bring a controlled substance into a penal institution or local confinement facility in order to establish the defendant's guilt of the offense made punishable by N.C. Gen. Stat. § 90-95(e)(9). For that reason, the fact that Defendant was involuntarily brought to the Wayne County Jail at a time when he possessed marijuana does not preclude his conviction for possession of a controlled substance in a local confinement facility. Thus, for all of the reasons set forth above, we conclude that the trial court correctly denied Defendant's motion to dismiss the possession of a controlled substance in a local confinement facility charge.

### B. Simple Possession

[3] Secondly, Defendant contends that, should this Court uphold his conviction for possession of a controlled substance in a local confinement facility, the trial court's judgment reflecting his conviction for simple possession of that same substance should be vacated. More specifically, Defendant argues that the trial court erred by entering judgment against him for both possession of a controlled substance in a confinement facility and simple possession of the same controlled substance because the latter is a lesser included offense of the former. Defendant's alternative contention has merit.

As we have previously noted, a defendant who has been found guilty of violating N.C. Gen. Stat. § 90-95(e)(9) has necessarily violated N.C. Gen. Stat. § 90-95(a)(3) as well. For that reason, the offense made punishable by N.C. Gen. Stat. § 90-95(a)(3) is a lesser included offense of the offense made punishable by N.C. Gen. Stat. § 90-95(e)(9). "It is well settled in North Carolina that when a defendant is indicted for a

---

Supreme Court did not comment upon, much less question, the validity of this principle in *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 194, n. 1, 657 S.E.2d 361, 363, n.1 (2008), we agree with the Supreme Court of California that effectively forcing such a choice upon the defendant does not violate the state and federal constitutional right against compulsory self-incrimination. *See Low*, 49 Cal. 4th at 391, 232 P.3d at 648-49, 110 Cal Rptr. 3d at 656 (rejecting a similar Fifth Amendment argument on that grounds that the "defendant in the present case, like his counterpart in the hypothetical case, was prosecuted and convicted . . . not because he gave or refused 'testimony' under official compulsion, but because he engaged in the nontestimonial criminal act of knowingly entering the jail in possession of a controlled substance;" that individuals like defendant [] have placed themselves in this unfortunate position by secreting illegal drugs on their persons before being arrested and jailed for committing other crimes; and that "[t]he Fifth Amendment privilege against self-incrimination does not remove every difficult choice of the guilty suspect's own making") (quoting *Brogan v. United States*, 522 U.S. 398, 404, 118 S. Ct. 805, 809-10, 139 L. Ed. 2d 830, 837 (1998)).

criminal offense he may be convicted of the offense charged or of a lesser included offense when the greater offense in the bill includes all the essential elements of the lesser offense." *State v. Snead,* 295 N.C. 615, 622, 247 S.E.2d 893, 897 (1978) (emphasis added). Moreover, "[i]n order for the State to obtain multiple convictions for possession of a controlled substance, the State must show distinct acts of possession separated in time and space." *State v. Moncree,* 188 N.C. App. 221, 231, 655 S.E.2d 464, 470 (2008). As a result, as the State concedes, Defendant should not have been separately convicted for both possession of a controlled substance in a confinement facility and simple possession of the same controlled substance, so that judgment should have been arrested in connection with his conviction for simple possession of marijuana.[13]

### III. Conclusion

Thus, for the reasons set forth above, we conclude that, while the trial court did not err by denying Defendant's motion to dismiss the possession of a controlled substance in a local confinement facility charge, it erred by entering judgment against Defendant based upon his convictions for both possession of a controlled substance in a local confinement facility and simple possession of the same controlled substance. As a result, we find no error in Defendant's conviction for possession of a controlled substance in a confinement facility, vacate Defendant's conviction for simple possession of a controlled substance, and remand this case to the Wayne County Superior Court for resentencing.

NO ERROR IN PART; VACATED AND REMANDED FOR RESENTENCING IN PART.

Judge STEELMAN concurs.

McGEE, Judge, dissenting.

I respectfully dissent from the majority's conclusion that the trial court did not err in denying Defendant's motion to dismiss the charge of possession of marijuana in a confinement facility.

---

13. Assuming, without deciding, that the State is correct in contending that Defendant failed to properly preserve this issue for appellate review, we elect, as we did in *Moncree,* to exercise our authority pursuant to N.C.R. App. P. 2 to reach the merits of Defendant's claim.

**STATE v. BARNES**

[229 N.C. App. 556 (2013)]

## I. Relevant Facts

I submit that the relevant facts to the offense of possession of marijuana in a confinement facility are as follows:

Defendant was arrested for driving while impaired, handcuffed with his hands behind his back, and transported to the Wayne County Detention Center (confinement facility). At the confinement facility, Defendant asked to use the restroom. The officer moved the handcuffs from behind Defendant's back to the front of Defendant. Defendant became "combative[,]" and assistance from a jailer was required to move Defendant into the area where breath samples were taken. In "placing [Defendant] in the seat[,] a bag fell out of his pants leg." Testing revealed the bag contained approximately 4.05 grams, or one seventh of one ounce of marijuana.

## II. *Actus Reus* Requirement

It is well-established that, to hold a defendant criminally liable for an offense, the State must show an actus reus. *See* 4 William Blackstone, Commentaries *19, *20-21.

> An involuntary act, as it has no claim to merit, so neither can it induce any guilt: the concurrence of the will, when it has its choice either to do or to avoid the fact in question, being the only thing that renders human actions either praiseworthy or culpable. Indeed, to make a complete crime cognizable by human laws, there must be both a will and an act.

*Id.* The common law is clearly in force in this State. *See* N.C. Gen. Stat. § 4-1 (2011).

> All such parts of the common law as were heretofore in force and use within this State . . . and which has not been otherwise provided for in whole or in part, not abrogated, repealed, or become obsolete, are hereby declared to be in full force within this State.

*Id.*

Our Supreme Court has long recognized the rule that criminal liability requires a voluntary act. *See State v. Boyd*, 343 N.C. 699, 473 S.E.2d 327 (1996); *State v. Jerrett*, 309 N.C. 239, 264-65, 307 S.E.2d 339, 353 (1983); *State v. Mercer*, 275 N.C. 108, 165 S.E.2d 328 (1969), *overruled in part on other grounds by State v. Caddell*, 287 N.C. 266, 215 S.E.2d 348 (1975).

*Boyd, Jerrett,* and *Mercer* concerned the defense of unconscious-ness. Unconsciousness is "often referred to as automatism: one who engages in what would otherwise be criminal conduct is not guilty of a crime if he does so in a state of unconsciousness or semi-conscious-ness." Wayne R. LaFave, Substantive Criminal Law § 9.4, at 33 (2nd ed.). "Although this is sometimes explained on the ground that such a person could not have the requisite mental state for commission of the crime, the better rationale is that the individual has not engaged in a voluntary act." *Id.*

As the majority notes, unconsciousness is not precisely the issue in the present case. The issue is more precisely whether a defendant who is brought to a confinement facility in handcuffs voluntarily pos-sesses marijuana in the facility. Both the defense of unconsciousness and the present issue implicate the requirement to show a defendant's *actus reus.*

Our Supreme Court has also long recognized that a conscious defen-dant, who is either forced to or ordered to act, does not act voluntarily. In *State v. Seahorn,* 166 N.C. 373, 81 S.E. 687 (1914), the defendants, husband and wife, were convicted of selling intoxicating liquor. The trial court instructed that, if the jury found that the wife acted "under the constraint of her husband, and that he was exercising such power over her as to cause her to make sales of liquor, in his presence, so that it was not her own voluntary act, . . . you should acquit the wife and convict the husband." *Seahorn,* 166 N.C. at 376, 81 S.E. at 688. Our Supreme Court agreed with the premise that a defendant could be forced or ordered to act involuntarily. Ultimately, the Court concluded that the wife "did not claim to have acted under the constraint of her husband." *Seahorn,* 166 N.C. at 377, 81 S.E. at 688.

Chief Justice Clark observed that the "presumption of compulsion of the husband as to crimes committed by the wife in the presence of her husband . . . should be set aside in the same mode [as permitting a husband to use force towards his wife], since we have 'advanced from the barbarism' upon which it was based." *Seahorn,* 166 N.C. at 379, 81 S.E. at 689 (Clark, C.J., concurring) (quoting *State v. Oliver,* 70 N.C. 60, 61 (1874)). The relative infrequency of modern criminal cases analyzing the voluntariness of an act does not diminish the requirement to show an *actus reus.*

The requirement to show an *actus reus* is a well-settled principle. *See Boyd, Jerrett,* and *Mercer, supra.* Thus, the *actus reus* showing that is required to impose criminal liability and the fact that a defendant can

be made to act involuntarily where ordered or otherwise forced are well-settled issues of law in this State. "[W]here a principle of law has become settled by a series of decisions, it is binding on the courts and should be followed in similar cases." *State v. Ballance*, 229 N.C. 764, 767, 51 S.E.2d 731, 733 (1949). The present issue must therefore be analyzed while bearing in mind these settled principles.

"[C]riminal liability requires that the activity in question be voluntary." Wayne R. LaFave, Substantive Criminal Law § 6.1, at 425 (2nd ed.). "The deterrent function of the criminal law would not be served by imposing sanctions for involuntary action, as such action cannot be deterred." *Id.* at 425-26. "In the overwhelming majority of criminal cases, the voluntary nature of defendant's acts is not at issue." *Id.* at 426, n.24. Where an officer transports a defendant into a confinement facility, the voluntary nature of the defendant's acts is at issue.

Defendant was initially handcuffed with his hands behind his back, and an officer transported Defendant to the confinement facility. A bag containing marijuana fell out of Defendant's pants while he was inside the facility. Defendant was convicted of possessing marijuana in a confinement facility. "Any person who violates G.S. 90-95(a)(3) on the premises of a penal institution or local confinement facility shall be guilty of a Class H felony." N.C. Gen. Stat. § 90-95(e)(9) (2011). N.C. Gen. Stat. § 90-95(a)(3) prohibits the possession of controlled substances.

The amount of marijuana found was approximately one seventh of one ounce. Possession of one seventh of one ounce of marijuana is a Class 3 misdemeanor. N.C.G.S. § 90-95(d)(4); N.C. Gen. Stat. § 15A-1340.23 (2011). The maximum sentence for a Class 3 misdemeanor for a Level II offender like Defendant is fifteen days of community or intermediate punishment. N.C.G.S. § 15A-1340.23. In contrast, possession of one seventh of one ounce of marijuana in a confinement facility is a Class H felony, for which Defendant was sentenced to six to eight months in prison. N.C.G.S. § 90-95(e)(9); N.C.G.S. § 15A-1340.17.

No case in this State analyzes the precise issue of whether a defendant who is brought to a confinement facility in handcuffs voluntarily possesses marijuana in the facility. Cases from other jurisdictions, including Oregon, Washington, and New Mexico, yield persuasive reasoning on similar facts.

In *State v. Tippetts*, 43 P.3d 455, 456 (Or. Ct. App. 2002), the defendant was charged with introducing "contraband into a correctional facility" in violation of Or. Rev. Stat. § 162.185. The majority argues that the Oregon statute is distinguishable from the statute in the present case.

However, violation of the Oregon statute "Supplying contraband" may be proven by showing that the defendant "knowingly introduces any contraband into a correctional facility" or, being confined in a correctional facility, "knowingly makes, obtains or possesses any contraband." Or. Rev. Stat. § 162.185. The defendant in *Tippetts* was found with marijuana in his pants pocket during a search inside the jail. Possession is thus the crux of the charge. For purposes of this analysis, the Oregon statute is indistinguishable from N.C.G.S. § 90-95(e)(9).

The State argued the "earlier voluntary act of possession" was sufficient to hold the defendant "criminally liable for the later involuntary act of introducing the marijuana into the jail." *Tippetts*, 43 P.3d at 459. The Court of Appeals of Oregon disagreed. The "[d]efendant, however, did not initiate the introduction of the contraband into the jail or cause it to be introduced in the jail. Rather, the contraband was introduced into the jail only because the police took [the] defendant (and the contraband) there against his will." *Tippetts*, 43 P.3d at 457.

In *State v. Eaton*, 229 P.3d 704, 705 (Wash. 2010) (en banc), the defendant received an enhanced sentence for possessing drugs in a jail. The Supreme Court of Washington stated that as "a general rule, every crime must contain two elements: (1) an actus reus and (2) a mens rea. Actus reus is defined as [t]he wrongful deed that comprises the physical components of a crime[.]" *Eaton*, 229 P.3d at 706 (internal quotations marks and citations omitted).

"Where an individual has taken no volitional action she is not generally subject to criminal liability as punishment would not serve to further any of the legitimate goals of the criminal law." *Eaton*, 229 P.3d at 707. "[T]he 'reason for requiring an act is, that an act implies a choice, and that it is felt to be impolitic and unjust to make a man answerable for harm, unless he might have chosen otherwise." *Id.* (quoting O.W. Holmes, Jr., The Common Law 40 (Mark DeWolfe Howe ed., Harvard Univ. Press, 1967) (1881)).

"Once [the defendant] was arrested, he no longer had control over his location. From the time of arrest, his movement from street to jail became involuntary: involuntary not because he did not wish to enter the jail, but because he was forcibly taken there by State authority. He no longer had the ability to choose his own course of action." *Eaton*, 229 P.3d at 708. The Supreme Court of Washington concluded the defendant did not voluntarily possess the drugs in the jail and affirmed the decision of the Court of Appeals of Washington.

In *State v. Cole*, 164 P.3d 1024 (N.M. Ct. App. 2007), the defendant was charged with bringing contraband into a jail. As in the present case, the defendant was arrested and charged with driving under the influence. *Cole*, 164 P.3d at 1025. An officer at the jail found a "small bag of marijuana" in the defendant's pocket. *Id.* The Court of Appeals of New Mexico agreed with the reasoning in *Tippetts*.

"[T]o be found guilty of bringing contraband into a jail . . . a person must enter the jail voluntarily. In this case, the undisputed facts show that [the defendant] did not bring contraband into the [jail]; law enforcement brought him and the contraband in his possession into the facility." *Cole*, 164 P.3d at 1027. "The dispositive issue is that [the defendant] cannot be held liable for bringing contraband into a jail when he did not do so voluntarily." *Id.*

Cases from other jurisdictions are not binding on this Court and, likewise, the apparent majority or minority nature of a foreign rule is not binding either. Nevertheless, cases from other jurisdictions can be persuasive, and I find the reasoning in the above cases to be convincing. Most importantly, the reasoning comports with our State's long-established principle that criminal liability requires a voluntary act. *See, e.g., State v. Bush*, 164 N.C. App. 254, 265, 595 S.E.2d 715, 722 (2004) (quoting *State v. Jerrett*, 309 N.C. 239, 264-65, 307 S.E.2d 339, 353 (1983) ("[T]he absence of consciousness not only precludes the existence of any specific mental state, but also excludes the possibility of *a voluntary act without which there can be no criminal liability*.") (emphasis added)).

In the present case, Defendant was handcuffed with his hands behind his back, and an officer transported Defendant to the confinement facility. Eventually, a bag containing marijuana fell out of Defendant's pants while Defendant was inside the facility. The facts demonstrate, and the majority does not disagree that, from the time Defendant was arrested, Defendant had no control over his location. Rather, the officer controlled Defendant's location. The officer took Defendant to the confinement facility. Defendant had no ability to choose his own course of action regarding his location. To hold Defendant criminally liable for possession of marijuana inside a confinement facility under these facts violates the common law requirement to show an *actus reus*.

### III. Fifth Amendment Implications

The majority notes that Defendant had the "option" "to disclose" the marijuana to the arresting officer before reaching the confinement facility. To hold that Defendant should have told the officer about his possession before being taken inside the confinement facility violates

the Fifth Amendment to the Constitution of the United States and Article I, Section 23 of the Constitution of the State of North Carolina. *See, e.g., Tippetts*, 43 P.3d at 457 n.2. The Fifth Amendment right against compelled self-incrimination "protects an individual from being compelled to give testimony which may incriminate him or which might subject him to fines, penalties, or forfeiture." *State v. Pickens*, 346 N.C. 628, 637, 488 S.E.2d 162, 166 (1997).

The "claim of privilege should be liberally construed[.] The privilege applies not only to evidence which an individual reasonably believes could be used against him in a criminal prosecution, but also encompasses evidence that would furnish a link in the chain of evidence needed to prosecute the claimant[.]" *Pickens*, 346 N.C. at 637, 488 S.E.2d at 167 (internal quotation marks and citations omitted).

To reveal possession of marijuana to an officer before entering the facility would directly implicate Defendant in criminal conduct, namely, violation of N.C.G.S. 90-95(d)(4). Defendant had no duty to reveal the marijuana to the officer before entering the confinement facility. To hold otherwise is contrary to the federal and state constitutional prohibitions against compelled self-incrimination.

The majority's response to this constitutional problem, in a footnote, cites *Viar v. N.C. Dep't. of Transp.*, 359 N.C. 400, 610 S.E.2d 360 (2005). *Viar* does not stand for the proposition that this Court cannot note constitutional problems unless the appellant so argues. *Viar* is not a criminal case and did not analyze a constitutional issue. Rather, *Viar* concerned the Rules of Appellate Procedure and has itself been abrogated to an extent by *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 657 S.E.2d 361 (2008).

Further, in reaching its conclusion that "effectively forcing such a choice upon the defendant does not violate the state and federal constitutional right against compulsory self-incrimination[,]" the majority ignores the Fifth Amendment problem by quoting language that the defendant in the present case did not give or refuse testimony, but rather engaged in a nontestimonial act. The present facts, of course, present no Fifth Amendment problem. The problem arises when the Court implicitly holds that, to avoid being punished for a felony, a defendant must confess to a misdemeanor—a dilemma the majority does not address.

### IV. Conclusion

The Fifth Amendment rights of Defendant remain intact, and the State is required to show that Defendant acted voluntarily. I would hold

that the State failed to offer evidence to show that Defendant acted voluntarily in bringing marijuana to the confinement facility and possessing marijuana inside. Without showing that Defendant acted voluntarily and thereby satisfying the common law requirement to show an *actus reus*, the State cannot hold Defendant criminally liable for possession of marijuana in a local confinement facility.